Mary D. DOVENMUEHLE, Elizabeth Dovenmuehle Rothermel, George H. Dovenmuehle, Jr., and Theodore H. Buenger, Plaintiffs,

v.

GILLDORN MORTGAGE MIDWEST CORPORATION, Gilldorn Insurance Midwest Corporation, and Dovenmuehle, Inc., Defendants.

No. 87 C 5790.

United States District Court,
N.D. Illinois, E.D.

July 13, 1987.

George Bullwinkel, John Allen, Burditt, Bowles & Radzius, Ltd., Chicago, Ill., for plaintiffs.

Harvey J. Barnett, Ira J. Bornstein, Harvey J. Barnett & Associates, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Plaintiffs Mary D. Dovenmuehle, Elizabeth Dovenmuehle Rothermel, George H.

Dovenmuehle, Jr. and Theodore H. Buenger brought this action in order to enjoin the defendants, Gilldorn Mortgage Midwest Corporation ("GMMC"), Gilldorn Insurance Midwest Corporation (GIMC")[1] and Dovenmuehle, Inc., from using their family name and trade name "Dovenmuehle" in their respective businesses. Plaintiffs allege violations of the Lanham Act, 15 U.S.C. Sec. 1125, as well as pendent state claims for invasion of privacy.[2] Simultaneously with filing their complaint, the plaintiffs moved for a temporary restraining order pursuant to Fed.R.Civ.P. 65(a). The parties subsequently entered into an agreed order pending an evidentiary hearing before the Court on July 10, 1987.

The defendants moved to dismiss the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) and filed a memorandum of law in opposition to plaintiffs' request for a preliminary injunction.

Prior to the hearing on July 10, the defendants orally requested the Court for a ruling on their motion to dismiss, but the Court decided to defer ruling until after the parties presented their evidence. The plaintiffs called seven witnesses: Mary D. Dovenmuehle, the widow of George H. Dovenmuehle, Sr.; Elizabeth Dovenmuehle Rothermel, the daughter of Mary and George Dovenmuehle, Sr.; Robert Wilson, a former officer of Percy Wilson Mortgage and Finance Corporation ("PWC"); Konrad Rother, an ex-employee of the original Dovenmuehle, Inc. and its president from 1973–75; H. James Fox, an attorney and employee of the original Dovenmuehle, Inc. from 1975–80; Theodore H. Buenger, an original Dovenmuehle, Inc. employee from 1945–73, and its president from 1960–73; and John Coblentz, the current president of Dovenmuehle Mortgage, Inc. (f/k/a GMMC), who was called as an adverse witness.

At the close of the plaintiffs' case, the defendants moved the Court for a directed ruling of judgment in their favor, or, alternatively, for a directed ruling that the plaintiffs were not entitled to a preliminary injunction. The Court again deferred its ruling until the close of all of the evidence. The defendants put on only one witness, John Coblentz. At the close of all of the evidence, the defendants renewed their motions for direct rulings. For the reasons set forth below, the Court grants the defendants' motion to dismiss, but will treat it as a converted motion for summary judgment as provided under Fed.R.Civ.P. 12(b).[3]

### Findings of Fact

George H. Dovenmuehle, Sr. was the principal officer of Dovenmuehle, Inc. ("Original Dovenmuehle"), a reputable and successful mortgage banking company with roots dating back to 1855 (see Pls.' Ex. 1), and which was chartered in 1923. Original Dovenmuehle provided and serviced construction loans on residential and income real estate[4] throughout the greater midwest. Original Dovenmuehle also provided and serviced construction loans through a wholly owned subsidiary, Fort Dearborn Corporation. Original Dovenmuehle was privately owned by George Dovenmuehle, Sr. and other immediate family members.

In 1969, however, all of the capital stock of Original Dovenmuehle was exchanged for stock in Chase Manhattan Corporation of New York, New York ("CMC"). (See Defs.' Ex. 1.) None of the plaintiffs retained any interest in Original Dovenmuehle after the 1969 stock transfer.

After the 1969 transaction, CMC continued to operate Original Dovenmuehle under its chartered name until 1980, at which time CMC sold certain of Original Doven-

---

**1.** Both GMMC and GIMC are wholly owned subsidiaries of Enterprise Savings Bank, which purchased Gilldorn Savings Association in December of 1985.

**2.** Plaintiffs, subsequent to filing suit, filed an amended complaint and then a second amended complaint.

**3.** The evidence is measured by the standard for granting summary judgment. *See Hensley v. Carey,* 818 F.2d 646, 648 (7th Cir.1987); Fed.R. Civ.P. 56.

**4.** "Income real estate" refers to real estate, such as apartment buildings and commercial warehouses, which produces income.

muehle's assets, including the trade name "Dovenmuehle", to PWC. (*See* Pls.' Exs. 2, 3.) PWC purchased the rights to the trade name "Dovenmuehle" in order, among other reasons, to prevent others from using it in competition against PWC. To this end, the agreement between CMC and PWC required CMC to cease using the name "Dovenmuehle." (Pls.' Ex. 2, at Sec. 6(A)(3)). Therefore, on September 18, 1980, CMC changed Original Dovenmuehle's name to Port Dearborn Corporation, and on December 22, 1980, PWC formed a new corporation named Dovenmuehle, Inc. ("New Dovenmuehle"). New Dovenmuehle, after its formation, did not engage in substantial business of any kind until April of 1987.

GMMC and GIMC were obligated to cease using the name "Gilldorn" as of July 1, 1987, and were, therefore, forced to select new names for their businesses. In April of 1987, after determining that they owned the trade name "Dovenmuehle", GMMC and GIMC elected to change their respective names to Dovenmuehle Mortgage, Inc. and Dovenmuehle Insurance Agency, Inc. They selected this name because they believed it was still commercially valuable and would enhance the image of their mortgage banking and insurance enterprises. GMMC and GIMC subsequently notified their correspondent banks and customers and spent approximately $100,000 in order to successfully implement the name changes.

Shortly after GMMC and GIMC decided to use the name "Dovenmuehle", they hired a public relations firm to draft an industry-related announcement that GMMC had changed its name to Dovenmuehle Mortgage, Inc. In order to gather information about Original Dovenmuehle, the public relations firm contacted Elizabeth Dovenmuehle Rothermel. It was during this phone conversation that the plaintiffs first learned that their family name once again was going to be used in the mortgage banking industry. Shortly thereafter, they filed this suit.

**5.** For example, a plaintiff cannot adjudicate "abstract" questions of wide public concern which amount to "generalized grievances." *Warth v.*

## Conclusions of Law

The defendants argue that the plaintiffs' claim under the Lanham Act suffers from numerous defects. The Court, however, finds it necessary only to address the defendants' claim that the plaintiffs lack standing to sue. The concept of standing, although amorphous and vague, is far from being boundless. When a litigant seeks relief in federal court, he is required to satisfy two distinct prongs of a standing analysis. First, as required by Article III of the Constitution, he must show that he has personally suffered an actual or threatened injury as a result of the defendant's alleged wrongful conduct and that the injury is likely to be redressed by a favorable decision. *Heckler v. Mathews,* 465 U.S. 728, 738, 104 S.Ct. 1387, 1394, 79 L.Ed.2d 646 (1984).

Additionally, a litigant must satisfy judicially created, prudential limitations.[5] *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The latter prong requires a litigant seeking to recover under a federal statute to demonstrate that the interest sought to be protected falls within the "zone of interests" sought to be protected by the statute. *Association of Data Processing Service v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *see also Locals 666 and 780 v. United States Department of Labor,* 760 F.2d 141, 143–44 (7th Cir.1985).

In order to determine whether the plaintiffs have personally suffered an actual or threatened injury as the result of the defendants' alleged unlawful conduct, the Court looks to the nature of the right which the plaintiffs' contend has been violated. In this action, the plaintiffs seek to enjoin the defendants from the alleged wrongful use of the family and trade name "Dovenmuehle" (Pls.' Complaint, at par. 5). It follows that in order to enjoin the defendants from using the trade name "Dovenmuehle", the plaintiffs must have

*Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

rights in or to the trade name and the defendants must lack such rights. The facts, however, do not support this conclusion.

■ In 1969, Original Dovenmuehle was purchased by CMC in a stock exchange transaction. CMC continued to operate Original Dovenmuehle under its chartered and incorporated name for more than ten years. Although the plaintiffs suggest otherwise, the Court holds that CMC acquired the trade name "Dovenmuehle" when it purchased Original Dovenmuehle in 1969. Furthermore, the fact that the 1969 agreement did not expressly address the issue of the trade name does not operate to defeat the defendants' rights in the trade name. Unless there is evidence to the contrary, a trade name will be presumed to have passed, even in the absence of formal assignment, to one to whom the business has been transferred. *United States Ozone Co. v. United States Ozone Co.,* 62 F.2d 881, 885 (7th Cir.1932); *P H. Schneider Brewing Co. v. Century Distilling Co.,* 107 F.2d 699, 703 (10th Cir.1939); *Discount Muffler Shop, Inc. v. Meineke Realty Corp., Inc.,* 535 F.Supp. 439, 449 (N.D.Ohio 1982); *see also Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co. (of Muskogee),* 565 F.2d 629, 632 (10th Cir. 1977).[6] Here, the plaintiffs adduced no evidence which would arguably show that the rights to the trade name "Dovenmuehle" did not pass to CMC along with ownership of Original Dovenmuehle in 1969. Nor did the plaintiffs produce any evidence showing that they made any claim to the name during the ten years CMC continued to operate Original Dovenmuehle under the name "Dovenmuehle."

■ After CMC purchased the trade name "Dovenmuehle" in 1969, it could dispose of the name in any way it deemed fit. As it turned out, CMC decided to continue to operate Original Dovenmuehle for approximately ten years. Only in 1980 did CMC sell the trade name "Dovenmuehle" to PWC. Ultimately, of course, the defendants ended up owning the trade name "Dovenmuehle." The plaintiffs, having no rights in the trade name "Dovenmuehle", will not personally suffer an actual or threatened injury if the defendants use it. Accordingly, the plaintiffs fail to satisfy the requirement of Article III, and therefore lack standing to maintain this action.

■ The plaintiffs, however, perhaps anticipating this difficulty, argue that the rights which they unquestionably possessed in the trade name prior to the sale of Original Dovenmuehle to CMC in 1969 "reverted" back to them in 1980 after CMC closed down the Original Dovenmuehle and sold the trade name to PWC without the plaintiffs' consent or knowledge. (*See* Pls.' Complaint at pars. 13, 16.) The problem with the plaintiffs' argument, however, is that it assumes that CMC required their consent before it could dispose of the trade name "Dovenmuehle." This assumption, as established above, is simply erroneous. Having lawfully acquired the rights in the trade name "Dovenmuehle", CMC was free to dispose of them as it pleased, and there was no legal requirement that CMC obtain the plaintiffs' consent before doing so.

■ Finally, the plaintiffs argue that even if the defendants lawfully acquired the trade name, they lost it by subsequently abandoning it through a seven-year period of non-use. The plaintiffs also claim that once the defendants lost the trade name "Dovenmuehle," it reverted back to the plaintiffs.[7] The Court disagrees. Even accepting the plaintiffs' position that the defendants abandoned the trade name, the Court holds that it did not revert back to the plaintiffs. Rather, the trade name simply returned to the public domain and was subsequently adopted and used by GMMC and GIMC in 1987, when GMMC and GIMC changed their respective names to Doven-

---

6. The result reached by the Court would be identical under Illinois law. *See Thompson v. Spring-Green Lawn Care,* 126 Ill.App.3d 99, 81 Ill. Dec. 202, 211, 466 N.E.2d 1004, 1013 (1984).

7. The Court notes that even if the trade name "Dovenmuehle" had reverted to the plaintiffs in 1980, as the plaintiffs suggest, then the plaintiffs would have abandoned the trade name by their subsequent non-use and intent not to use it in the future. *See generally,* 15 U.S.C. Sec. 1127.

muehle Mortgage, Inc. and Dovenmuehle Insurance Agency, Inc. and notified their correspondent banks and customers of the changes.

It is well established that once a trademark or trade name is abandoned, the trademark or trade name merely returns to the public domain and becomes available for adoption, use, and ownership by any new claimant. *See, e.g., Defiance Button Machine Co. v. C & C Metal Products,* 759 F.2d 1053, 1059 (2d Cir.1985); *Koppers Co., Inc. v. Krupp-Koppers GmbH,* 517 F.Supp. 836, 854 (W.D.Pa.1981); *Bellanca Aircraft Corp. v. Bellanca Aircraft Engineering, Inc.,* 190 U.S.P.Q. 158, 168 (1976). Assuming *arguendo,* that the defendants abandoned the name "Dovenmuehle" through non-use, it merely returned to the public domain and became available for adoption, use, and ownership by any new claimant. In this case, the new claimant turned out to be the defendants. When the defendants adopted and used the name "Dovenmuehle" in 1987, they regained ownership of it.

Nevertheless, the plaintiffs contend that an exception to the general rule should obtain where, as here, the trade name is also a unique family name. The plaintiffs do not, however, cite any authority in support of this proposition, and this Court declines to accept the plaintiffs' invitation to forge new law by carving out such an exception.

Furthermore, the Court is not persuaded that the issue of whether a unique family name, once abandoned, reverts back to its original family rather than returning to the public domain is one of first impression. In *Bellanca Aircraft Corp. v. Bellanca Aircraft Engineering, Inc.,* 190 U.S.P.Q. 158 (1976), the Patent and Trademark Office Trademark Trial and Appeal Board held, *inter alia,* that the abandoned trademark "Bellanca", itself an uncommon family name, became "available for adoption,

use and ownership by any new claimant * * *." *Id.* at 168. It did not revert to the family members once it had been abandoned. Indeed, the Board also reasoned that once a person adopts and uses his family name as a trademark or trade name, he "severs [the mark] from the personality of his family and ma[kes] the mark *subject to the common law principles and statutory provisions pertaining to all types of marks." Id.* at 163 (emphasis supplied).[8] The Board's reasoning, which the Court finds persuasive, means that a family name is subject to the same principles surrounding abandonment as any other mark and forecloses the exception which the plaintiffs urge upon the Court. Save for the decision in *Bellanca,* there is little to guide the Court in this matter. The use of a personal name, as opposed to purely business names[9] does educe in our society a particularly strong sense of emotion.

Most recently there has been much legal work about the naming of children, a powerful, poignant concern whose significance one cannot gainsay even in the utter absence of economic value. *See Rio v. Rio,* 132 Misc.2d 316, 504 N.Y.S.2d 959 (1986) (review of cases and commentary). One modern court has referred to one's "sacred right to the honest use of his own name", yet that court found it possible that the sacred right could be "transferred or the subject of an estoppel or self-imposed restraint of user" and thus be lost. *Carson v. Harris,* 242 S.W.2d 777, 780 (Tex.Civ. App.1951). Occasionally courts may require that names be explicitly transferred but, for the reasons stated above, we think that is not true here where the name was both a trade name and corporate name and all of the shares of the corporation were surrendered to the purchaser. The Court holds that a family name which becomes a trade name is, like any other mark, subject

---

**8.** *See also American Steel Foundries v. Robertson,* 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926); *American Optical Corp. v. North American Optical,* 489 F.Supp. 443, 447 (N.D.N.Y.1979) ("Protection is afforded against the confusing use of corporate or trade names

on the same basic principles applicable to trademarks").

**9.** *E.G.,* Bargain Town, Specialty Products, Aviation Service.

to all of the rules and principles pertaining to marks.[10]

### Conclusion

The Court, although finding that the plaintiffs were sincere and candid witnesses, and being acutely aware of their sensitivity to seeing their family name used by total strangers without their knowledge or consent, nevertheless holds that the plaintiffs do not possess any right, title, or interest in the trade name or corporate name "Dovenmuehle" which they sold almost 18 years ago. Therefore, the plaintiffs will not personally suffer any actual or threatened injury as a result of the defendants' use of the trade name. Accordingly, the Court holds that the plaintiffs lack standing to sue. Since this Court's jurisdiction is based solely on plaintiffs' claim under the Lanham Act and that claim has been dismissed on the issue of standing, the plaintiffs' pendent claims, which lack an independent jurisdictional basis, also must be dismissed. *See Maguire v. Marquette University*, 814 F.2d 1213, 1218 (7th Cir.1987).

Finally, having disposed of the entire action, the Court finds it unnecessary to rule upon plaintiffs' motion for a preliminary injunction. For all of the foregoing reasons, the defendants' converted motion for summary judgment is GRANTED.

---

**10.** The Court notes that the plaintiffs, assuming that they possessed an actionable claim, may be barred by the equitable doctrine of laches from asserting it. The defense of laches is available to defeat equitable claims for an injunction in a federal trademark action. *See, e.g., Safeway Stores, Inc. v. Safeway Quality Foods, Inc.,* 433 F.2d 99 (7th Cir.1970); *Saratoga Vichy Spring Co., inc. v. Lehman,* 625 F.2d 1037, 1041 (2d Cir.1980); *Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1161 n. 14 (5th Cir. 1982). A laches defense requires three elements: (1) delay in asserting a right or claim; (2) that the delay was inexcusable; and (3) that undue prejudice resulted from the delay. *Arm-* *co,* 693 F.2d at 1161. If, as plaintiffs contend, CMC did not acquire the trade name "Dovenmuehle" when CMC purchased Original Dovenmuehle in 1969, then the plaintiffs are guilty of at least a ten-year delay in asserting their claim. Given the fact that the plaintiffs were fully aware that CMC was using the trade name, it would appear their delay in asserting their claim is inexcusable. Finally, there is a strong argument to be made that undue prejudice resulted from their delay since the defendants are in jeopardy of losing their $100,000 investment to implement the name changes, and who in all likelihood would be forced to spend another $100,000 in order to change their names again.