871 F.2d 697
 57 USLW 2660, 10 U.S.P.Q.2d 1550
 Mary D. DOVENMUEHLE, Elizabeth Dovenmuehle Rothermel, George
H. Dovenmuehle, Jr., and Theodore H. Buenger,
Plaintiffs-Appellants,
v.
GILLDORN MORTGAGE MIDWEST CORPORATION, Gilldorn Insurance
Midwest Corporation, and Dovenmuehle, Inc.,
Defendants-Appellees.
 Nos. 87-2275, 87-2442.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 24, 1988.
Decided April 5, 1989.
 
 George E. Bullwinkel, Burditt Bowles & Radzius, Ltd., Chicago, Ill., for plaintiffs-appellants.
 Ira J. Bornstein, Harvey J. Barnett & Assoc., Ltd., Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, and MANION and KANNE, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Plaintiffs sued defendants claiming that defendants' use of the trade name "Dovenmuehle, Inc." violated Sec. 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a), and their rights under state law. The district court, in a thorough and well-reasoned opinion, dismissed plaintiffs' Lanham Act claims for lack of standing and then dismissed plaintiffs' pendent state claims for lack of an independent jurisdictional basis. See Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 670 F.Supp. 795 (N.D.Ill.1987). We affirm.
 
 I.
 
 2
 The original Dovenmuehle, Inc. ("Original Dovenmuehle") was privately owned by George Dovenmuehle, Sr., and members of his immediate family. Chartered as an Illinois corporation in 1923, the company enjoyed an excellent reputation in connection with its business of providing and servicing construction loans for residential and income properties.
 
 
 3
 In 1969, the members of the Dovenmuehle family sold all their interest in Original Dovenmuehle to Chase Manhattan Corporation ("Chase") in exchange for Chase stock. Although nothing in the contract between the Dovenmuehles and Chase referred to the sale of the trade name "Dovenmuehle," for the next eleven years Chase continued to operate Original Dovenmuehle under the name "Dovenmuehle, Inc." In 1980 Chase sold certain Original Dovenmuehle assets and the trade name "Dovenmuehle, Inc." to the Percy Wilson Mortgage and Finance Corporation ("Percy Wilson"). After that sale, Original Dovenmuehle operated under the name of Port Dearborn Corporation. Percy Wilson then formed a new subsidiary corporation named "Dovenmuehle, Inc." ("New Dovenmuehle"). New Dovenmuehle did not engage in any substantial activities until 1987.
 
 
 4
 After it incorporated New Dovenmuehle, Percy Wilson was sold and its name eventually changed to Gilldorn Mortgage Midwest Corporation ("Gilldorn"). In April 1987, after concluding that it owned the rights to the trade name "Dovenmuehle, Inc.", Gilldorn and an affiliated corporation, Gilldorn Mortgage Insurance Corporation ("Gilldorn Insurance"), elected to change their names to Dovenmuehle Mortgage, Inc., and Dovenmuehle Insurance Agency, Inc., respectively. Gilldorn and Gilldorn Insurance then spent over $100,000 to change their names and obtained approval from the VA and FHA in connection with the name changes.
 
 
 5
 The plaintiffs in this action, all members of the Dovenmuehle family, brought suit after learning that Gilldorn and Gilldorn Insurance planned to use "Dovenmuehle" in their trade names. Mary Dovenmuehle is George Dovenmuehle, Sr.'s widow and presently lives in a retirement home. Mrs. Dovenmuehle never worked for Dovenmuehle, Inc. and never worked in the mortgage banking industry. George Dovenmuehle, Jr. and Elizabeth Dovenmuehle Rothermel are George Dovenmuehle, Sr.'s children. Although George Dovenmuehle, Jr. briefly worked in the mortgage banking industry, neither George nor Elizabeth Dovenmuehle are currently involved in the industry. Theodore H. Buenger is George Dovenmuehle, Sr.'s nephew. Mr. Buenger was the president of Original Dovenmuehle at the time of its sale to Chase. He has not been involved in the mortgage banking industry since 1973.
 
 
 6
 Defendants moved to dismiss plaintiffs' complaint on, among other grounds, plaintiffs' lack of standing to bring their Lanham Act claims. The district court deferred ruling on defendants' motion pending its hearing on plaintiffs' request for a preliminary injunction. After the hearing, which involved testimony from a number of witnesses including plaintiffs, the district court converted defendants' motion to dismiss to a motion for summary judgment and dismissed plaintiffs' claims under Sec. 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a), for lack of standing. Dovenmuehle, 670 F.Supp. at 796. The district court then dismissed plaintiffs' pendent state claims for lack of an independent jurisdictional basis. Id. In addition, the court awarded defendants costs under 28 U.S.C. Sec. 1924 for court reporter charges for deposition transcripts.
 
 II.
 
 7
 We must resolve two questions on this appeal. First, we must consider whether the district court correctly held that plaintiffs lacked standing under Sec. 43(a) of the Lanham Act to challenge defendants' use of the trade name "Dovenmuehle." Second, we must consider whether the district court properly awarded defendants the costs of court reporter charges for deposition transcript charges under 28 U.S.C. Sec. 1924. We affirm the district court on both issues.[1]
 
 A.
 
 8
 Section 43(a) of the Lanham Act provides for a relatively broad class of individuals to sue under the Act. As set forth in the statute:
 
 
 9
 Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation ... and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
 
 
 10
 15 U.S.C. Sec. 1125(a). Typically, plaintiffs suing under Sec. 43(a) are business competitors claiming to be injured as a result of false advertising. See Thorn v. Reliance Van Co., Inc., 736 F.2d 929, 931 (3d Cir.1984). The question of how broadly the Lanham Act extends beyond business competitors, however, is somewhat uncertain.[2]
 
 
 11
 In Colligan v. Activities Club of New York, Ltd., 442 F.2d 686, 692 (2d Cir.), cert. denied, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971), the Second Circuit held that standing under Sec. 43(a) is limited to commercial parties, thereby rejecting claims by consumers under the Act. Nonetheless, within the class of commercial parties, the Second Circuit has made clear that the class of parties with standing in Sec. 43(a) is quite broad. A party need not be in direct competition with a defendant to challenge a defendant's practices under the Act. See PPX Enterprises, Inc. v. Audiofidelity, Inc., 746 F.2d 120, 125 (2d Cir.1984). All a commercial party needs to bring suit under the Act is a "reasonable interest to be protected" against activities that violate the Act. Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190 (2d Cir.1980) (quoting 1 R. Callman, Unfair Competition, Trademark and Monopolies, Sec. 18.2(b) at 625 (3d ed. 1967)).
 
 
 12
 Other circuits have also agreed that the question of standing under Sec. 43(a) "turns on whether the party 'has a reasonable interest to be protected against' " conduct violating the Act. Smith v. Montoro, 648 F.2d 602, 608 (9th Cir.1981) (quoting Callman, supra ). See also Thorn, 736 F.2d at 933; Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 160 (1st Cir.1977). There has been some criticism of language in the Second Circuit's Colligan decision limiting standing to members of a "purely commercial class," 442 F.2d at 692. Cases criticizing Colligan have reasoned that limiting standing under Sec. 43(a) to members of a "purely commercial class" is too narrow a reading of the Act's broad language that allows a person "who believes that he is or is likely to be damaged" by the defendant's activities to sue. See Thorn, 736 F.2d at 932; Smith, 648 F.2d at 608. Whether the plaintiff's claims are viewed under the Second Circuit's authority limiting standing to commercial parties or under a more expansive approach, however, plaintiffs in the present case have failed to establish "a reasonable interest to be protected...."
 
 
 13
 The plaintiffs here cannot premise their claims upon any contention that they have been damaged or are likely to be damaged in any commercial activity as a result of defendants' use of the trade name "Dovenmuehle, Inc." None of the plaintiffs are engaged in competition, even indirectly, with the defendants. Nor do they claim any present intention to operate a commercial activity under the name "Dovenmuehle." Nonetheless, plaintiffs claim that they fall within the "zone of interest" of the Lanham Act because they retained a commercial interest in their family name that would be of substantial value if they choose to enter business, particularly mortgage banking. They also claim that as members of the Dovenmuehle family they have standing because the defendants placed the family in a false light before the public and appropriated their family name. Neither of these arguments has merit.
 
 
 14
 Plaintiffs' challenge to the defendants' use of the trade name "Dovenmuehle" is based on the assumption that the trade name "Dovenmuehle" and the Dovenmuehle family name are inextricably intertwined. This assumption, however, is not supported by either the facts or the law. Absent contrary evidence, a business trade name is presumed to pass to its buyer. United States Ozone Co. v. United States Ozone Co. of America, 62 F.2d 881, 885 (7th Cir.1932). See also Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co., 565 F.2d 629, 632 (10th Cir.1977); Discount Muffler Shop, Inc. v. Meineke Realty Corp. Inc., 535 F.Supp. 439, 449 (N.D.Ohio 1982). This is so even if the trade name happens to be the seller's surname. As stated by the Fourth Circuit long ago in Guth v. Guth Chocolate Co., 224 F. 932, 933 (4th Cir.1915), "[i]t is well settled that a person who has adopted and used his surname as a trade-mark, or trade-name, may transfer the same with the good will of a business and thereby divest himself of the right to his name in connection with such a business." See also J. McCarthy, Trademarks and Unfair Competition Sec. 18:10, at 820 (2d ed. 1984) ("If a person has sold a business which is identified by his personal name, the name is an asset which he has sold, and he cannot keep use of the name and keep the purchase price too.")[3]
 
 
 15
 As the district court correctly determined, plaintiffs failed to present any evidence that they retained any interest in the trade name "Dovenmuehle" after the sale of Original Dovenmuehle to Chase. Plaintiffs claim on appeal that they only granted Chase a "license" to use the name Dovenmuehle.[4] There is simply no evidence in the record to support this contention.
 
 
 16
 Plaintiffs also argue that even if Chase acquired full rights to sell the trade name "Dovenmuehle," the name reverted back to them after it was allegedly abandoned due to a long period of non-use after Percy Wilson acquired the name. Even assuming abandonment, the Dovenmuehles did not reacquire rights to the trade name. Once a trademark or trade name is abandoned, it returns to the public domain. See Defiance Button Machine Co. v. C. & C. Metal Products Corp., 759 F.2d 1053, 1059 (2d Cir.1985); see also Bellanca Aircraft Corp. v. Bellanca Aircraft Engineering, Inc., 190 U.S.P.Q. 158, 168 (TMTAB 1976). It does not "revert" back to the previous owners.
 
 
 17
 The substance of plaintiffs' claims boils down to their displeasure at "strangers" using the trade name of a company with which the family has long associated and which operated under their surname. The Dovenmuehle family, however, commercialized the name "Dovenmuehle" and then divested themselves from the trade name by selling their entire interest in the business for a handsome return. Their emotional desire to prevent others from using the name may be understandable, but that desire does not create Lanham Act standing. Given that they have no interest in the trade name "Dovenmuehle" and are not even arguably engaged in commercial activities, the district court correctly dismissed their claims for lack of standing.[5]
 
 B.
 
 18
 Having concluded that the district court correctly dismissed plaintiffs' Lanham Act claims, we must next address whether the district court properly awarded defendants the costs of court reporter charges for deposition transcripts. Defendants deposed plaintiffs Mary Dovenmuehle, Elizabeth Dovenmuehle and Theodore Buenger. Plaintiffs in turn deposed three people who were associated with either Percy Wilson or Gilldorn. The district court awarded defendants the $958.00 they paid in court reporter charges for transcripts of these depositions. This award of costs was well within the district court's discretion.
 
 
 19
 Under 28 U.S.C. Sec. 1924 a party may recover the expenses of deposition transcripts shown to be reasonably necessary to the case. State of Illinois v. Sangamo Construction Co., 657 F.2d 855, 867 (7th Cir.1981). Plaintiffs contend that there was not a proper showing of necessity because the defendants made only "trivial" use of the three plaintiffs' depositions at the hearing. There is no requirement, however, that a deposition be used as evidence in court as a condition of recovery for transcript charges. Id. All that need be shown is that the depositions were reasonably necessary to the case. Here, it is obvious that defendants' depositions of the plaintiffs were reasonably necessary to its defense of plaintiffs' action.
 
 III.
 
 20
 For the reasons stated above, the decision of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs argue on appeal that the issues in this case should be analyzed under the standards for a Fed.R.Civ.P. 12(b)(6) motion to dismiss. The district court, however, converted defendants' motion to a summary judgment motion. The court heard testimony from several witnesses, thus expanding the proceeding well beyond consideration of just the facts alleged in the complaint. Plaintiffs have made no argument that the district court failed to give them adequate notice or that they could have presented further evidence if given notice. As such, we review the district court under the Fed.R.Civ.P. 56 standards for summary judgment
 
 
 [2]
 Having dismissed plaintiffs' Lanham Act claims for lack of standing, the district court correctly dismissed plaintiffs' state law claims for lack of an independent jurisdictional basis. Plaintiffs appear to argue that the court had original jurisdiction over these claims under 28 U.S.C. Sec. 1338(b) which provides courts with original jurisdiction over unfair competition claims "when joined with a substantial and related claim" under federal copyright, patent, and trademark laws. Plaintiffs did not, however, have a "substantial" claim under the Lanham Act. Furthermore, under Sec. 1338(b) a district court has discretion to dismiss pendent state claims when the federal claim is dismissed prior to trial. See Jason v. Fonda, 526 F.Supp. 774 (S.D.Cal.), aff'd, 698 F.2d 966 (9th Cir.1981); see also Pate Co. v. RPS Corp., 685 F.2d 1019, 1026 (7th Cir.1982) (whether to exercise the pendent jurisdiction Sec. 1338(b) grants is within the district court's discretion)
 
 
 [3]
 Some courts have held that a business seller can continue using his personal name as a mark unless there is an express agreement that the buyer has the exclusive right to use the seller's name. See, e.g., Poorman v. Julian, 22 Ill.App.2d 208, 160 N.E.2d 169 (1959). These authorities have no bearing on the issues involved in this appeal. Plaintiffs are not contending that they are seeking to use the name "Dovenmuehle" in connection with their own business or even some future commercial enterprise
 
 
 [4]
 In their brief plaintiffs state "that the Original Dovenmuehle corporation had an implied license to use the name until 1980 is not disputed.... The reasonable inference ... is that the family permitted Original Dovenmuehle an implied license to use its name." Not only is there no evidentiary foundation for this claimed implication, but appellants cite no authority which gives credence to this claim
 
 
 [5]
 At oral argument, plaintiffs additionally claimed standing to challenge defendants' use of the trade name on behalf of consumers. Issues raised for the first time at oral argument, however, are deemed waived. See Turner v. Henman, 829 F.2d 612, 615 (7th Cir.1987)