In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 05-3287

REGINALD D. BURKE, SR.,

*Plaintiff-Appellant,*

*v.*

JANET JOHNSTON, PAMELA S. KNICK,
VICKI BENJAMIN, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 503—**David R. Herndon**,<sup>Œ</sup> *Judge.*

---

ARGUED MAY 10, 2006—DECIDED JUNE 27, 2006

---

Before FLAUM, *Chief Judge*, and BAUER and EVANS,
*Circuit Judges*.

EVANS, *Circuit Judge.* In 1997, Reginald Burke pleaded
no contest to two counts:[1] third degree sexual assault and

---

Œ Judge Herndon, of the United States District Court for the
Southern District of Illinois, sitting by designation.

[1] Judge Herndon, in his July 21, 2005, decision, says the no
contest plea was offered to two counts of third degree sexual
assault and one count of false imprisonment. The judge may
very well be right, but Burke's brief says it was one count each
(continued...)

false imprisonment. A Wisconsin circuit court in Walworth County sentenced him to 5 years for the sexual assault conviction and 2 years on the false imprisonment count. The sentences were to run consecutively and also consecutive to a separate sentence Burke was serving for a parole violation. In May 1999, the Wisconsin court amended its order so that the 1997 sentences would run concurrently.

Later that year, Burke began filing various pro se pleadings, arguing that he had not been given credit for the more than 8 months he spent in jail between his arrest on July 12, 1996, and his sentencing on March 20, 1997. All of his attempts to get relief from the state courts were rejected.

Burke then began writing to officials within the Wisconsin Department of Corrections (DOC), making the same claim for jail credit. After 2 years of correspondence with various functionaries, Burke's sentence was administratively modified by DOC personnel in January 2002 to reflect credit for 8 months and 8 days of jail time.[2]

---

[1] (...continued)
of sexual assault and false imprisonment. The State, in a sign of things to come, ignores this difference in its brief. For that reason we accept, as uncontradicted, Burke's statement.

[2] Like a number of matters that are bollixed up in this case, the 8-month-plus credit grant appears to be a bit of a windfall for Mr. Burke. When he was taken into custody on the sexual assault and false imprisonment charges on July 12, 1996, he tells us in his brief he was also charged with, and detained in custody for, a "violation of his parole" from a previous offense. That parole, according to Burke's brief, was granted on October 4, 1993, after he served only 8 months of a 4-year sentence. When he went into custody in 1996, he "owed" the State a little more than 3 years on his 1993 conviction. While the 1996 charges were pending, Burke's parole was revoked (on October 24, 1996, we are told) by an administrative law judge. Burke was ordered to serve
(continued...)

Burke then filed this federal action under 42 U.S.C. § 1983 against the State of Wisconsin. He claims he was detained in jail longer than he should have been due to the "deliberate indifference and delay" of DOC officials in granting him the jail credit. Such a claim, if proved, would establish a violation of Burke's Eighth Amendment right to be free from cruel and unusual punishment. *See Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001); *Moore v. Tartler*, 986 F.2d 682, 686 (3rd Cir. 1993). For this alleged injury Burke seeks money damages.

This case is complicated by Burke's various re-arrests and parole revocations and, as we will see, by the State's shifting legal theories. But the question we must decide is a straightforward one: whether Burke may proceed to litigate the merits of his § 1983 claim in federal court. The State has raised two objections. First, it maintains that Burke's case is jurisdictionally barred by the *Rooker-Feldman* doctrine because (the State says) he is seeking to litigate in federal court the same claim regarding jail time credit on which he lost in the Wisconsin state courts. *Rooker-Feldman* was the basis on which the district court granted the State's motion to dismiss, from which Burke appeals, and we review the district court's decision on subject matter

---

[2] (...continued)
3 years, until July 12, 1999, on the revocation charge. Given that Burke was apparently subject to a parole hold from July 12, 1996, until October 24, 1996, we think it rather odd that the DOC apparently found he was entitled to credit for that time on the sentence he ultimately received in March of 1997 on the new 1996 charges. At the most, he might have been able to claim a credit for the almost 5 months he spent in custody between October 24, 1996, and March 20, 1997, when he was sentenced on the 1996 convictions. But that "credit" may be illusory at best, for he would be entitled to no credit for those 5 months if the time was being served on, and counted against, the time he owed the State on his 1993 conviction.

jurisdiction *de novo*. *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002). The State also argues that Burke's deliberate indifference claim is barred by state law issue preclusion.

The *Rooker-Feldman* doctrine recognizes that federal district courts do not have subject matter jurisdiction to hear appeals from state court decisions; only the Supreme Court has the authority to reverse or modify a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16 (1923). Precisely stated, the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

The State has had difficulty making up its mind about the applicability of *Rooker-Feldman* to this case. After arguing *Rooker-Feldman* and winning on the issue in the district court, the State did a cut-and-run. In its brief to this appeal, it conceded after "very close review" that Burke's § 1983 action was not jurisdictionally barred under *Rooker-Feldman*. Then, at oral argument, its counsel sheepishly informed us that the State was flip-flopping again and was standing by its earlier position that *Rooker-Feldman* did indeed apply. One reason for the change of heart, the State's counsel explained, was that because the *Rooker-Feldman* bar is jurisdictional it cannot be waived. The State appears to misunderstand the difference between waiver and a concession that, upon better analysis, a particular jurisdictional bar simply does not apply to a given set of circumstances. We think the State should have stuck with its concession because this is not a *Rooker-Feldman* case.

In his § 1983 claim, Burke is not seeking federal review of the state court decisions that denied him the jail credit he believed he was owed. It would make no sense for him to

do so, since he ultimately got the credit (and as we noted in our second footnote, a generous credit indeed) he wanted by going through the DOC. This case is about a different claim: that the DOC officials who gave Burke the credit took too long to do so because they were deliberately indifferent. That claim was never presented to or decided by the Wisconsin courts, and so *Rooker-Feldman* presents no jurisdictional bar.

At oral argument, the State's counsel asserted the view that the DOC lacked the authority to grant Burke his 8 months and 8 days of jail time credit. The State and Burke disagree over the meaning of a provision in the Wisconsin statutes governing jail time credit. Wis. Stat. § 973.155(1)(a) provides, in pertinent part: "A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." Normally such credits are applied by the sentencing court. However, a bit later the statute says: "If this section has not been applied at sentencing to any person who is in custody . . . the person may petition the department to be given credit under this section." Wis. Stat. § 973.155(5).

Burke understands § 973.155(5) to mean that the DOC enjoys independent authority—what his counsel at oral argument called "de novo jurisdiction"—to consider and grant jail time credit, regardless of what state courts have previously done. And indeed, this second-bite-at-the-apple approach appears to be the way the DOC interprets the law, since it gave Burke his credit even though the record shows it was aware that the sentencing judge had previously declined to do so.

The State, on the other hand, apparently believes the DOC can act only in the absence of a finding by a judge. In this case, it says, the jail-time credit was "applied at sentencing," Wis. Stat. § 973.155(5), in the sense that the judge

considered Burke's request and rejected it. The State's counsel told us at oral argument that "upon careful review" of the sentencing statute, it was "clear" that the DOC "had no authority" to give Burke the credit he received. The State believes that this position supports its *Rooker-Feldman* argument, reasoning as follows. A federal court could not grant Burke relief on his deliberate indifference claim without finding that he was actually entitled to jail time credit. Since a state court had declined to grant that credit, the DOC had no authority to do so. Therefore, in entertaining Burke's § 1983 suit, a federal court necessarily would have to review the controlling state court judgment.

We cannot agree with the State's analysis. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil Corp.*, 544 U.S. at 293 (quoting *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993)).

In any case, the state has provided us with no interpretive authority for its critical premise that the DOC lacks power to grant jail time credit after a state court has declined to do so. (Nor, for that matter, has Burke pointed to any authority other than Wis. Stat. § 973.155(5) itself for his position that the DOC has "de novo jurisdiction" to consider jail time credit.) Late in the game, the State has made the DOC's independent authority to grant jail time credit a key issue in its defense. Yet the issue appears nowhere in the State's brief. For present purposes, we assume that the DOC had the authority to do what it did. *See Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 701 n.5 (7th Cir. 1989) (issues raised for the first time at oral argument are deemed waived). But it appears to us that this is a pivotal question of state statutory interpretation which requires fuller development—by

both parties—when the district court considers the merits of Burke's claim. Should the State decide to mount a proper argument on this point when it returns to district court, and should the district court find itself persuaded that the DOC acted beyond the scope of its authority in granting Burke his credit, then Burke obviously would not have a viable claim for deliberate indifference. It is also possible that the DOC had the statutory authority to do what it did but simply erred in eventually concluding that Burke was entitled to jail time credit (see our second footnote). It would seem an off outcome, of course, for Burke to prevail on a claim that DOC officials were deliberately indifferent by dragging their heels in reaching a conclusion that ultimately gave him an unjustified windfall. While we agree that incarceration after the time specified in a sentence has expired violates the Eighth Amendment if it is the product of deliberate indifference, *Campbell*, 256 F.3d at 700, we have not addressed the elements of a deliberate indifference claim in this context. The Third Circuit has held that a plaintiff must establish three elements: that a prison official knew of the prisoner's problem and thus of the risk that unwarranted punishment was being inflicted; that the official either failed to act or took only ineffectual action under the circumstances; and that there was a causal connection between the official's response to the problem and the unjustified detention. *Moore*, 986 F.2d at 686.

Nor is Burke's deliberate indifference claim barred by state law issue preclusion. Federal courts give preclusive effect to state court judgments to the extent provided by state law. *See* 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). Under Wisconsin law, to have preclusive effect an issue must have been "actually litigated" in the first action and must have been necessary to its outcome. *May v. Tri-County Trails Comm'n*, 583 N.W.2d 878, 880 (Wis. Ct. App. 1998).

In its brief the State asserts stubbornly that with the present federal case, "Burke is once again challenging the

amount of jail time with which he should be credited." As we have explained, Burke in fact does not challenge the amount of the jail time credit he received. He got the credit from the DOC, so the prior litigation of that issue is irrelevant to his present claim. Burke alleges deliberate indifference on the part of DOC officials whom he says did not grant it to him as early as they should have. Since the issue of deliberate indifference was not litigated in state court and was not a factor in any previous judgment against Burke, Burke's claim is not barred by principles of preclusion.

For all these reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*