NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 24, 2012[*]
Decided October 26, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-1521

JAMES A. JONES,
    *Plaintiff-Appellant,*

v.

JOANN SKALSKI, *et al.,*
    *Defendants-Appellees.*

Appeal from the United States District
Court for the Western District of Wisconsin.

No. 10-cv-766-bbc

Barbara B. Crabb,
*Judge.*

**O R D E R**

James Jones participated in Wisconsin's voluntary "boot camp" for young offenders and was rewarded with early release from prison. In this action under 42 U.S.C. § 1983, he claims that program managers violated his right to due process and subjected him to cruel and unusual punishment by stalling his release for six months after he successfully completed the program. The district court granted summary judgment for the defendants. We affirm the judgment.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The relevant facts are undisputed. Jones was serving a sentence for resisting or obstructing an officer, WIS. STAT. 946.41(1), when in May 2008 he entered the Challenge Incarceration Program for Youthful Offenders. That rehabilitative program emphasizes physical exercise, manual labor, counseling, treatment for substance abuse, and military-style discipline. *Id.* § 302.045; Wisconsin Department of Corrections, *Challenge Incarceration Program* (Aug. 12, 2011), http://www.wi-doc.com/CIPProgramOverview03-16-05.pdf. After an inmate has completed the program, which ordinarily runs for six months, the sentencing court will amend the judgment by reducing the prison term to time served and substituting extended supervision for the remaining months of the original prison sentence. WIS. STAT. § 302.045(3m)(b). On November 21, 2008, prison superintendent JoAnn Skalski wrote a letter to Jones's sentencing judge, James Daley of the Rock County Circuit Court, confirming that Jones had completed the program and asking the judge to authorize his release. But a clerical employee at the prison mistakenly mailed this letter to Judge Charles Constantine of the Racine County Circuit Court.

Three days later, on November 24, Jones attended a graduation ceremony for boot-camp participants. Although program rules forbid physical contact between male inmates and female staff, Jones tried to hug his social worker, Kesha Marson, at the graduation ceremony. Marson quickly jumped back when Jones placed a hand on her shoulder and he moved on. (The parties dispute whether Jones then tried to hug his substance-abuse counselor, Ulla Hintz.) The next day, Jones met with his treatment team, which included Marson, Hintz, and Scott Grady, a captain. They accused Jones of violating a program rule, but he refused to abide this view of his thwarted hug. Two more meetings failed to change his mind, so the treatment team recommended placing Jones in "quitter status." That designation is given participants whose unacceptable progress risks removal from the program. In the meantime, Judge Constantine had issued but then rescinded an amended judgment authorizing Jones's release; the judge informed Skalski of his mistake and explained that he hadn't realized that Jones was sentenced in another court.

The treatment team's recommendation was evaluated by a "superintendent's committee" answerable to Skalski, who has the final say on matters of discipline. After meeting with Jones, the committee proposed allowing him to stay in the program but extending his participation for 90 days, in part so that he could learn social boundaries and etiquette. Skalski agreed that Jones should be extended but thought that 28 days was long enough. Jones insisted, however, that he already had completed the program and would not accept an extension of any length. He thus was deemed to have withdrawn from the program. Jones filed a grievance, which was denied. A reviewing official agreed with that decision but also concluded that the sentencing judge should have the final say about early release. Skalski then notified Judge Daley that Jones had met the graduation criteria but engaged in misconduct at the ceremony, and then had chosen to terminate his participation

when given the option to stay in the program to address his behavior. Judge Daley issued an amended judgment and directed the Department of Corrections to release Jones and place him on extended supervision. Jones was released on May 27, 2009.

Jones then sued. His amended complaint claims that Skalski, Marson, Hintz, Grady, and several other prison employees denied him due process and violated the Eighth Amendment by delaying his release from custody. At screening the district court dismissed the due-process claim, reasoning that the defendants had met with Jones before deciding on a course of action and that he does not identify any other procedure to which he was entitled. The court later granted summary judgment on the Eighth Amendment claim, explaining that Jones could not establish a violation because he had failed to show that the defendants violated state law by detaining him beyond his anticipated release date. The court noted that the statute governing the Challenge Incarceration Program, WIS. STAT. § 302.045, affords discretion to the Department of Corrections to determine when an inmate has successfully completed the program. The court observed that the only provision of the statute mandating release at a particular time, *id.* § 302.045(3m)(d), did not apply to Jones because that subsection compels action only after the sentencing court has issued an amended judgment reducing the prison term. Subsection 302.045(3m)(a) does say that "the department shall inform the court" upon determining that a participant has completed the program successfully, but the district court reasoned that Skalski had tried to do just this when she sent the notice of completion to the wrong judge. And, the court continued, since Skalski afterward had reason to believe that in fact Jones had not completed the program successfully, she could not have deliberately violated § 302.045(3m)(a) by not sending a like notification to Judge Daley as soon as she realized that the first one had been sent to the wrong court.

On appeal Jones argues that Wisconsin law gave him a right to early release that attached the moment that Skalski first decided to notify Judge Daley that he had completed the Challenge Incarceration Program. Specifically, he invokes § 302.045(3m)(a)'s directive that if the Department of Corrections determines that an inmate has successfully completed the program, the department *shall inform* the sentencing court. According to Jones, his misconduct at the graduation ceremony was irrelevant because, he reasons, the statute's mandatory language means that Skalski could not change her mind once she concluded that he had satisfied the criteria to graduate.

We are not persuaded by Jones's argument. The Wisconsin statute governing the Challenge Incarceration Program is not couched in language unambiguously foreclosing program managers from changing their minds about an inmate's suitability for release before the sentencing judge has issued an amended judgment, and we have found no

decision from a Wisconsin court giving the statute that reading. To prevail on his Eighth Amendment claim, Jones would have to establish that the defendants intentionally prevented his release after his custodial sentence had ended, or at least were deliberately indifferent to the risk that their actions would lead to that result. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993). A prison official's awareness may be inferred when the law confers an unambiguous right to release. *See Campbell*, 256 F.3d at 701–02. The statutory provision at issue tells the Department of Corrections what to do when it determines that an inmate has completed the program; the language is silent about how and when that determination is made, and about when the judgment of the program managers becomes final. A participant walking the stage at graduation does not continue out the door of the prison; an amended judgment from the sentencing court, not a diploma from program managers, is the key to release. Under Jones's proposed reading of the statute, however, an inmate could misbehave with impunity as soon as notice of successful completion is placed in the mailbox, comfortable in the knowledge that the notice, once sent, could not be retracted by program administrators.

Jones also argues that the district court improperly relied on § 302.045(3m)(d), which was not effective until October 2009. But Jones misses the court's point. In discussing his allegations, the court identified subsection (3m)(d) as the only provision requiring prison officials to release an inmate at a particular time. Yet even this subsection could not help Jones, the court reasoned, because it applies only after the sentencing court has issued an amended judgment. And though Jones is correct that this provision was not part of the statute when he participated in the program, all this means is that *no* provision required his release at any particular time.

Jones also maintains that the district court erred in dismissing his due-process claim at screening. He cites no authority, however, for his assumption that participating in the Challenge Incarceration Program gives an inmate a protected liberty interest in early release, even if the program criteria have been satisfied. Moreover, he was consulted repeatedly before a decision was made about his misconduct and its effect on his participation in the program, and he does not identify any process to which he was entitled but did not receive.

Finally, Jones suggests that the district court abused its discretion by denying his motion for appointment of counsel because, he says, his claims are too complex for him to litigate on his own. Jones, however, has no right to court-appointed counsel in this civil suit, *see Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006), and the district court reasonably denied his motion in light of

Jones's personal knowledge of the relevant events and the suit's lack of factual or legal complexity. *See Romanelli*, 615 F.3d at 851–52.

AFFIRMED.