**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2196**

ERIKA BAZEMORE,

Plaintiff - Appellant,

v.

BEST BUY,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland at Greenbelt. Peter J. Messitte, Senior District Judge. (8:18-cv-00264-PJM)

Submitted: March 20, 2020                                    Decided: April 21, 2020

Before AGEE, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion in which Judge Agee and Judge Richardson joined.

Daniel S. Harawa, Spencer Bailey, Student Counsel, Jeremy Claridge, Student Counsel, Sarah Spring, Student Counsel, Appellate Clinic, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellant. William W. Carrier, III, Emelia N. Hall, TYDINGS & ROSENBERG LLP, Baltimore, Maryland, for Appellee.

QUATTLEBAUM, Circuit Judge:

In this appeal, we consider the requirement of a hostile work environment claim that unwelcomed racial and sexual conduct be imputable to an employer. Concluding that the conduct that created the alleged hostile work environment is not imputable to the employer here, we affirm.

## I.

The case stems from an incident on February 5, 2017, at the Best Buy store in Waldorf, Maryland, where Erika Bazemore, an African-American woman, was working as a wireless sales consultant.[1] According to Bazemore, another Best Buy employee, Anne Creel—a white woman and an appliance sales representative—made a "racist and sexually charged joke" to a small group of coworkers that included Bazemore. J.A. 49. Creel, who was eating mixed nuts, identified a Brazil nut and asked the group, "Hey, do you know what these were called back in the day?" J.A. 49. With the group waiting for the answer, Creel asked, "Do you promise not to call HR on me?" J.A. 49. She then looked directly at Bazemore—the only black woman in the group—and said, "N[****r] T[*]ts!" J.A. 5. Creel laughed while everyone else "was frozen for a few seconds." J.A. 49. Bazemore broke the silence by saying, "Okay" and then walked away. J.A. 49. In her position, Creel was not

---

[1] Since we review an order dismissing Bazemore's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts as described herein are as alleged by Bazemore.

Bazemore's supervisor. But Creel was "best friends" with April Brewster, the store's general manager. J.A. 49.

Bazemore reported the incident to Best Buy's corporate human resources department the next day, February 6. Three days later, Colleen Hayes, from Best Buy's human resources department, called to tell Bazemore she was handling the matter. On February 20, two weeks after Bazemore reported Creel's comment, Hayes left a voicemail for Bazemore informing her that the matter had been resolved and that the case was closed, adding that Bazemore could call Hayes if she had further questions.

But Bazemore perceived no sign at work that anything had changed or that management had given the incident "any real attention," J.A. 50, so she called Hayes to find out how the matter had been resolved. Her calls were unreturned.

Despite Hayes' earlier voice message that the matter had been resolved, the atmosphere in the store remained tense to Bazemore. She avoided being alone with either Creel or Brewster. The longer Bazemore waited for a response or evidence that action had been taken, the more "trash like" she felt. J.A. 50. In her view, Creel's remark had been directed at her and was humiliating. Bazemore felt coworkers looking at her breasts, and said the joke "took me back to the days of [s]lavery," when black women would be publicly scrutinized before being sold.

At the end of March, having concluded that "nothing was going to [be] done about my traumatic experience," Bazemore filed a complaint with the Equal Employment Opportunity Commission, claiming she had been harassed based on her race and sex, and

3

that Best Buy had not taken "corrective action to resolve the incident." J.A. 56. In its response to the EEOC, Best Buy asserted that it promptly investigated the incident, that Creel admitted making the offensive statement, and that she received a "final written warning." J.A. 59. Best Buy denied that Bazemore had been racially or sexually harassed. The EEOC ultimately determined it could not conclude whether Best Buy had violated Title VII and issued Bazemore a right-to-sue letter.

Bazemore sued Best Buy pro se, claiming she was harassed because of her race and gender and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. After Best Buy removed the proceeding to federal court, Bazemore filed an amended complaint, also pro se, in which she asserted—as she had in her original complaint—that Creel's offensive statement and its aftermath had "affected my mental state, my confidence, and my self-esteem, to the point that it has cost me my full-time job"[2] J.A. 52. She alleged she is in therapy and taking

---

[2] Bazemore has not provided specifics about the full-time job she lost, but she does not appear to have lost her job at Best Buy. She asserts in her amended complaint that she had two jobs, and that she lost her full-time job "about a month after" Creel's harassment occurred because "they decided to close my position, and no longer needed me." J.A. 52. The incident with Creel occurred on February 5, 2017, and Bazemore says she called Hayes on February 27 to find out how the matter had been resolved. She waited for a response until March 28, when she filed her complaint with the EEOC. In her EEOC complaint, Bazemore stated that "I have been employed by [Best Buy] since February 2010." J.A. 56. Best Buy asserted in its response to the EEOC, dated May 11, 2017, that Bazemore began working for it in February 2011, not 2010, but said she "currently holds the role of Mobile SWAS Sales Consultant working on a part-time basis." J.A. 58. Neither Bazemore nor Best Buy said she went from full-time status at Best Buy to part-time status after Creel's remark. Furthermore, Bazemore's amended complaint—filed in February 2018, a year after the incident—uses the present tense to describe her working conditions at Best Buy: "I still walk on eggshells to this day about the matter. Simple task like a trip to the bathroom (Continued)

4

medication to treat diagnosed chronic depression, and that stress caused her weight to drop from 113 pounds to 98 pounds.

Best Buy moved to dismiss or, alternatively, for summary judgment. Along with its motion, Best Buy included a copy of its "Coaching and Corrective Action Guidelines" and a copy of a "Coaching & Corrective Action Form" signed by Creel on February 18, 2017. This form showed that she received a "Final Warning," the last corrective action step before termination, as a result of her remark to Bazemore.

After Bazemore filed an opposition to Best Buy's motion, the district court granted the motion to dismiss. In granting Best Buy's motion, the district court did not rely on the "Coaching and Corrective" documents submitted by Best Buy. Instead, it relied only on Bazemore's factual allegations. The court concluded that Bazemore failed to state a hostile work environment claim because she had not pleaded any facts that would impute Creel's conduct to Best Buy. The court held that Bazemore's allegations were not imputable to Best Buy because she did not allege facts suggesting that Best Buy knew about the harassment and failed to stop it. Rather, it found that the allegations in the complaint indicated that "Best Buy responded promptly to Bazemore's complaint and Creel's harassment ceased." J.A. 133. It further found that, based on those allegations, Creel's

---

requires planning, making sure I'm never caught alone with the GM (April Brewster) and Anne Creel back there." J.A. 51. Similarly, she uses the present tense in her opposition to Best Buy's motion to dismiss, filed in April 2018, asserting, for example, that "I no longer go to the appliance department where Ms. Creel works, or near it, for any reason, and it's one of the largest departments. This is my unfortunate new reality." J.A. 111–112.

conduct could not be imputable to Best Buy because the harassment stopped after Best Buy disciplined Creel.

The district court also considered allegations from Bazemore's Opposition to Best Buy's Motion to Dismiss even though they were not made in her complaint. Specifically, in her Opposition, Bazemore alleged that other Best Buy employees who used racial slurs similar to the one Creel used had been terminated. The court concluded that these allegations, lacking dates, detail and context, were too general to compare to Bazemore's allegations about Creel. It reached a similar conclusion with respect to allegations made for the first time in Bazemore's Opposition that Creel made racial slurs against "gypsies" before and after the alleged incident. The court held that general allegations of racial slurs, without detail, context, date or circumstances, are insufficient to establish a hostile work environment. Thus, it granted Best Buy's motion to dismiss, and dismissed Bazemore's complaint with prejudice.

After the district court denied her motion for reconsideration, Bazemore timely appealed the initial order and the denial of reconsideration. The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo the district court's ruling on a motion to dismiss for failure to state a claim. *Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir, 2019). In assessing the sufficiency of a complaint, this Court "assume[s] as true all its well-pleaded facts and

6

draw[s] all reasonable inferences in favor of the plaintiff." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017). If the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" then dismissal is improper. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must simply contain factual allegations that "raise a right to relief above the speculative level, thereby nudging [the] claims across the line from conceivable to plausible." *Hately v. Watts*, 917 F.3d 770, 782 (4th Cir. 2019) (quoting *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)). Moreover, because Bazemore was pro se below, her complaint must be "liberally construed . . . however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).

Title VII prohibits racial or sexual harassment that creates a hostile work environment for the harassed employee. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (en banc). To make such a claim, Bazemore must show she was subjected to (1) unwelcome conduct, (2) based on her race or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to Best Buy, her employer. *Boyer-Liberto*, 786 F.3d at 277.

The question presented to us relates to element four: whether Bazemore has sufficiently alleged that Creel's conduct is imputable to Best Buy. Importantly, the existence of unwelcome conduct, based on an employee's race or sex, that is severe or pervasive enough to create a hostile work environment, is not on its own enough to hold

7

an employer liable.[3] For an employer to be liable, the harassing employee's conduct must also be imputable to the employer. And to survive a Rule 12(b)(6) motion to dismiss, an employee must allege sufficient facts to plausibly satisfy the imputability requirement.

Our analysis of the imputability requirement is informed by the status of the alleged harasser. Here, Creel, according to the complaint, made the allegedly harassing remark. But Bazemore alleges that Creel is her coworker, not her supervisor. Therefore, imputing Creel's harassment to Best Buy requires Bazemore to show that Best Buy knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it. *Strothers v. City of Laurel*, 895 F.3d 317, 332–34 (4th Cir. 2018*)*; *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015).

Applying that standard to Bazemore's complaint, we accept, as we must, all of Bazemore's allegations as true. While Bazemore alleged that Best Buy knew of Creel's conduct by virtue of her complaint to the corporate human resources department, she does not allege that Best Buy failed to stop it. Instead, Bazemore asserts that Hayes contacted her three days after she reported what Creel said and within two weeks Creel received a written warning. Importantly, she does not assert that Creel, or anyone else at Best Buy, harassed her again. The district court correctly held that, given those assertions, Bazemore

---

[3] Best Buy also argued in its Motion to Dismiss and on appeal that Bazemore failed to allege sufficient facts to plausibly satisfy the requirement of a hostile work environment claim that the conduct at issue was sufficiently severe or pervasive to make her work environment hostile or abusive. But like the district court, we decline to address the issue of severity and pervasiveness because Bazemore's complaint fails to satisfy the fourth element of a hostile work environment claim.

has not pled that Best Buy failed to act to stop Creel's harassment. *E.E.O.C v. Xerxes Corp.*, 639 F.3d 658, 670 (4th Cir. 2011) ("A remedial action that effectively stops the harassment will be deemed adequate as a matter of law." (internal quotation marks omitted)).

To be sure, Bazemore's allegations express her belief that the action taken by Best Buy in response to her complaint was inadequate. She alleged she expected "maybe a sit down with the General Manager, [or] maybe a store meeting reminding the staff about the ethics policy, especially considering it happened in such a public manner on the sales floor, and so many people knew about it." J.A. 50. But Title VII does not prescribe specific action for an employer to take in response to racial or sexual harassment, or require that the harasser be fired, as Bazemore suggests should have happened to Creel. As noted above, it is enough for an employer to take action "reasonably calculated" to stop the harassment. *Pryor*, 791 F.3d at 498; *Xerxes Corp.*, 639 F.3d at 669–72.

Our *Xerxes* decision illustrates this important principle. There, African-American employees at a manufacturing facility reported to their supervisors multiple derogatory and racially-based slurs and other conduct by several co-workers. *Xerxes*, 639 F.3d at 663. The supervisors responded with disciplinary measures after which the conduct ceased for a period of time. *Id*. at 663. Following a report of another incident, the employer ramped up its discipline which, again, seemed to stop the harassing conduct. *Id*. at 664. But later, a more severe incident was reported, this time carried out by an unknown perpetrator. *Id*. The employer admonished the latest conduct at a plant meeting, but, despite an investigation, was unable to identify the perpetrator. *Id* at 664-666. No other incidents were reported. *Id*. at 666.

9

The African-American employees later filed Title VII hostile work environment claims. Central to our Court's analysis was evaluating whether the employer should have taken more severe steps, such as terminating employees, to stop the harassing conduct. *Id*. at 670–672. In granting summary judgment to the employer, we noted "Plaintiffs often feel that their employer 'could have done more to remedy the adverse effects of the employee's conduct. But Title VII requires only that the employer take steps reasonably likely to stop the harassment.'" *Id*. at 674 (quoting *Knabe v. Boury Corp.*, 114 F.3d 407, 414 (3rd Cir. 1997)). We then held:

> Here, [the employer's] responses to each reported incident of harassment as of February 2006 were "prompt and either effective or proportional to the seriousness and frequency of the incidents, and therefore [they] were reasonably calculated to end the harassment." *Adler*, 144 F.3d at 677. When harassment reoccurred, [the employer] "t[ook] increasingly progressive measures to address [it]." *Central Wholesalers*, 573 F.3d at 178. . . . Holding [the employer] "liable under these circumstances would be tantamount to imposing strict liability on an employer . . . regardless of the employer's . . . response," *Spicer*, 66 F.3d at 711, and "would make employers insurers against future [racial] harassment by coworkers after an initial employee response, regardless of the nature of the response taken. This is liability without end," *Adler*, 144 F.3d at 679.

*Id*. at 675–676.

Although *Xerxes* involved an order granting summary judgment and more extensive and severe conduct than that alleged by Bazemore, its holding applies to Bazemore's allegations that Best Buy should have disciplined Creel more severely. Those allegations do not state a plausible claim because, so long as discipline is reasonably calculated to end the behavior, the exact disciplinary actions lie within Best Buy's discretion. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("Particularly, this Court 'does not sit

10

as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . .'") (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997)). Bazemore's complaint makes clear that in response to her complaints, Best Buy took steps that were not only reasonably calculated to end Creel's behavior, but that did, in fact, end it. In light of those allegations, whether or not Best Buy could have done more is irrelevant. Thus, even construing Bazemore's pro se allegations liberally, we agree with the district court that Creel's conduct is not imputable to Best Buy.

Bazemore's allegations that Creel's racist and sexist joke changed the environment at work and caused her to suffer physically and psychologically do not aid her in imputing Creel's conduct to Best Buy. Those allegations only go to the third element of her hostile work environment claim—that Creel's harassment was so severe or pervasive that it made the environment at work hostile or abusive. *See Harris*, 510 U.S. at 21–23; *Boyer-Liberto*, 786 F.3d at 277. As set forth above, we do not address whether or not Bazemore has sufficiently pled severe and pervasive harassment because we hold today that she has not pled facts that plausibly allege that Creel's conduct is imputable to Best Buy. Therefore, even accepting these allegations as true, they do not allege that Best Buy failed to stop Creel's conduct or even that it was negligent in responding to it.

The district court also considered two additional allegations Bazemore lodged against Best Buy in her Opposition to Best Buy's Motion to Dismiss even though they were not included in her complaint. Without opining on whether these allegations were properly before the district court, we agree that they do not sufficiently bolster Bazemore's claim.

11

Bazemore asserted in her Opposition to Best Buy's Motion to Dismiss that other employees have been fired for using the n-word. As the district court noted, these allegations lack dates, detail or context. Accordingly, they are too general to be compared to Bazemore's allegations about Creel's conduct. *See Xerxes Corp.*, 639 F.3d at 677. The court further held that even if the allegations were comparable to the present case, they do not plausibly allege that Creel's conduct is imputable to Best Buy because Bazemore acknowledges in her complaint that Creel was disciplined for her conduct. *See id.* at 674. We agree. Once again, it is not our role to micro-manage Best Buy's disciplinary procedures. As a matter of law, Best Buy is only required to discipline in a way reasonably calculated to end the behavior. Bazemore does not allege that Best Buy failed to do this.

Similarly, Bazemore argued her in Opposition to Best Buy's Motion to Dismiss that Creel also called another employee as well as Best Buy customers "gypsies." But this argument, like the claim that other Best Buy employees had been fired for using the n-word, lacks sufficient detail to allow a comparison with Creel's conduct. *See id.* at 677. Thus, it does not plausibly allege a claim. Additionally, Bazemore did not allege any of these remarks were directed at her or that she, herself, heard them. Finally, Bazemore does not assert, as the district court noted, that Best Buy knew or should have known about Creel's gypsy statements. *See Strothers*, 895 F.3d at 332–34; *Pryor*, 791 F.3d at 498. Thus, like Bazemore's allegations about the discipline imposed on other employees who used the n-word, the allegations about Creel's use of the word "gypsy" do not assert facts sufficient to impute Creel's harassment of Bazemore to Best Buy.

## III.

Our decision today should not be construed as condoning or even minimizing Creel's tasteless effort at a joke. Instead, our decision is limited to analyzing whether Bazemore's allegations plausibly state a Title VII hostile work environment claim. As noted above, in the case of allegedly harassing comments by a co-worker, an employee must allege plausible facts that the employer knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it. For the reasons set forth above, Bazemore failed to do this.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process. Accordingly, the judgment of the district court is

*AFFIRMED*.