**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1958**

CHARLES HOLLOWAY,

Plaintiff - Appellant,

v.

STATE OF MARYLAND; MARYLAND MILITARY DEPARTMENT;
FREESTATE CHALLENGE ACADEMY,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Richard D. Bennett, Senior District Judge.  (1:20-cv-00377-RDB)

Argued:  September 21, 2021                    Decided:  April 25, 2022

Before MOTZ, QUATTLEBAUM, and RUSHING, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Rushing
wrote the opinion, in which Judge Motz and Judge Quattlebaum joined.

**ARGUED:**  Jeremy David Greenberg, CLARK LAW GROUP, PLLC, Washington, D.C.,
for Appellant.  Lisa O'Mara Arnquist, OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Denise M. Clark,
CLARK LAW GROUP, PLLC, Washington, D.C., for Appellant.  Brian E. Frosh, Attorney
General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore,
Maryland, for Appellees.

RUSHING, Circuit Judge:

Charles Holloway sued his former employer, the Maryland Military Department, and related entities Freestate Challenge Academy and the State of Maryland, alleging that they discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. The district court dismissed Holloway's complaint for failure to state a claim. We affirm the dismissal of Holloway's hostile work environment claim. But because we conclude that Holloway has plausibly alleged claims of unlawful termination and retaliation, we reverse the dismissal of those claims and remand for further proceedings.

I.

The following facts are taken from Holloway's complaint and assumed to be true for purposes of this appeal. *See Fairfax v. CBS Corp.*, 2 F.4th 286, 290 (4th Cir. 2021).

Holloway, a black man, began his employment with Defendants in 2014, as the "Program Coordinator/Deputy Director" of Freestate Challenge Academy, a residential education program for at-risk adolescents. From 2014 to 2016, Holloway worked under Program Director Charles Rose, a white man. While he worked for Rose, Holloway was a top performer and regularly received outstanding evaluations. In June 2016, Rose was dismissed as Program Director but apparently reinstated elsewhere within the Maryland Military Department. Holloway then assumed the role of Acting Program Director. Around November 2016, Holloway was promoted to Program Director.

After Holloway's promotion, he began to have problems with the Director of Human Resources, a white man named Nicholas Pindale. According to Holloway, Pindale

2

refused to work with him and required Holloway, unlike other directors, to take his concerns to the Human Resources Deputy Director, Princess Neal Washington, a black woman. In early 2018, Holloway learned he was being paid around $5,000 less annually than Rose had been. Holloway raised the pay discrepancy with Pindale, who allegedly agreed Holloway was not being compensated fairly but did not rectify the disparity.

Around February 1, 2018, Holloway filed his first Equal Employment Opportunity (EEO) complaint, alleging "discrimination and harassment/hostile work environment on the part of Mr. Pindale." J.A. 8. Mediation resulted in a settlement agreement, which Holloway alleges Defendants breached. Sometime later in February or March, Pindale contacted one of Holloway's subordinates and asked if she felt safe under Holloway's leadership. Holloway alleges this communication was not founded on an actual safety concern of which he was aware. On March 1, Holloway filed his second EEO complaint. He again claimed discriminatory harassment by Pindale. Mediation resulted in another settlement agreement, which Holloway contends was breached.

From 2016 to 2018, Holloway had received positive evaluations from the Chief of Staff, Annette Deener. In January 2018, Deener retired and was replaced by Jeffrey Teller. Within a few months, Holloway experienced difficulty with Teller.

Sometime in April 2018, Teller was on Freestate's campus for a meeting. He observed police at the school and notified Deener. (The complaint does not reconcile the contradictory allegations that Deener retired in January 2018 and yet was still Chief of Staff at the time of this incident.) Holloway alleges that Teller's recounting of the incident to Deener undermined Holloway's leadership and hindered his ability to effectively manage

3

Freestate. During a meeting in May, Teller again allegedly disparaged Holloway's leadership and management skills and admonished Holloway for not working with Pindale. Later that month, Teller honored Pindale instead of Holloway in an employee recognition program.

On May 25, 2018, Teller issued Holloway a disciplinary performance evaluation asserting that Holloway had mismanaged the Freestate budget. Holloway alleges that Budget Officer John Nickerson, a white man, was the person responsible for budget oversight and yet did not receive any type of disciplinary sanction for mismanaging the budget. Four days later, on May 29, Holloway filed his third EEO discrimination complaint.

In June, Holloway requested a meeting with Teller to discuss procurement card access. Teller scheduled the meeting for 6:30 a.m., an hour and a half before the 8:00 a.m. start of Holloway's workday. At the meeting, Teller allegedly yelled at and berated Holloway. Teller slammed documents on the table and demanded that Holloway read aloud a chart depicting the organizational staffing structure. Teller told Holloway that he was "beneath him" and demanded Holloway address him as "sir," although Holloway alleges white employees were permitted to address Teller by his first name. J.A. 12. Finally, Teller said he was aware of Holloway's complaint against Pindale "and that he (Mr. Teller) would be involved." J.A. 12.

Around the same time, a "climate survey" was issued at Freestate to solicit feedback about leadership. J.A. 12. No other department received such a survey, nor was one issued

4

during Rose's tenure as Program Director. Not long thereafter, Teller contacted Holloway's subordinates questioning his whereabouts during the workday.

On or about August 16, Holloway was informed that the State had completed its investigation of his EEO complaints and had found "no evidence to substantiate his claims." J.A. 13. Then on August 22, Holloway was fired. The reasons given for his termination were "concerns regarding budget issues in a recent audit on April 2018 and low enrollment numbers." J.A. 13. He was replaced by Karilynn Dunnmeyer, a white woman. Holloway alleges that, although Dunnmeyer had fewer years of supervisory experience and little to no experience performing the functions of Program Director, she was paid at least $10,000 more annually than Holloway for the same position.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Holloway filed the present lawsuit, alleging unlawful termination, hostile work environment, and retaliation. Although he asserted claims under Title VII and Maryland law, he subsequently abandoned his Maryland law claims. Defendants moved to dismiss Holloway's complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

The district court granted Defendants' motion and dismissed all of Holloway's claims with prejudice. Regarding unlawful termination, the district court concluded that Holloway had "failed to plead a *prima facie* case of discrimination" because his complaint did not plead facts showing that his work was satisfactory to his employer or that any proffered comparators were similarly situated to Holloway and treated more favorably. *Holloway v. Maryland*, 1:20-cv-377-RDB, 2020 WL 4582705, at \*5 (D. Md. Aug. 10, 2020). The court dismissed the hostile-work-environment claim because the allegations

5

were not "severe or pervasive" enough to state a plausible claim. *Id.* at \*6. As for retaliation, the district court concluded that Holloway failed to allege a causal link between his EEO complaints and his termination, given that he was terminated "well over six months after his first EEO complaint and nearly three months after his last EEO complaint." *Id.* at \*7. Holloway timely appealed.

II.

We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere "labels and conclusions" will not do. *Twombly*, 550 U.S. at 555.

It has long been the rule that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" under the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to withstand a motion to dismiss. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021); *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015); *Bass*, 324 F.3d at 764–765. The district court therefore erred in requiring Holloway to plead facts establishing a prima facie

6

case of discrimination. But we may affirm the dismissal despite the district court's erroneous analysis if the complaint fails under the ordinary rules for assessing sufficiency. *See McCleary-Evans*, 780 F.3d at 585. So we proceed with de novo review of the complaint.

## III.

Holloway asserted three claims under Title VII: unlawful termination, retaliation, and hostile work environment. We address each in turn.

## A.

To state a claim for unlawful termination, a Title VII plaintiff must allege facts sufficient to raise a plausible inference that his employer discharged him because of his race. *See* 42 U.S.C. § 2000e-2(a)(1); *Bing*, 959 F.3d at 616–617. In his complaint, Holloway alleged that Defendants terminated him for the stated reasons of budget mismanagement and low enrollment but that those reasons were a pretext for racial discrimination. Holloway alleged three important facts in support: (1) Nickerson, who was white, was the person actually responsible for budget oversight but did not receive any adverse performance evaluation or disciplinary sanction for the alleged budget mismanagement; (2) Holloway's predecessor, Rose, who was white, was not disciplined for multiple years of low enrollment; and (3) Defendants contravened their own human resources policy by not giving Holloway an opportunity to enter into a performance improvement plan before terminating him. Holloway also alleged that Pindale, who possessed the authority to fire employees, refused to communicate directly with Holloway

7

as he did with white directors but instead required Holloway to communicate with Washington, who is black.

We find these facts sufficient to raise the inference of a Title VII violation "above a speculative level." *Twombly*, 550 U.S. at 555; *see Bing*, 959 F.3d at 617. The district court focused on the reasons given for Holloway's termination, but Holloway pled additional facts suggesting that those reasons were a pretext for race discrimination. Discovery may show that Nickerson and Rose are distinguishable from Holloway in terms of their responsibilities or shortcomings, but we cannot reach that conclusion based on the existing allegations in Holloway's complaint. *See Woods*, 855 F.3d at 651 (observing that "[t]he similarly situated analysis typically occurs in the context of establishing a *prima facie* case of discrimination, not at the 12(b)(6) stage").

"Law does not blindly ascribe to race all personal conflicts between individuals of different races," *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000), and Holloway's complaint is thin on facts (as opposed to conclusions) suggesting racial motivation. But in view of his pretext allegations, which we accept as true at this stage and which support an inference of race discrimination, we conclude that Holloway's complaint has "'nudged [his] claims . . . across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 570). Accordingly, we vacate the dismissal of Holloway's unlawful termination claim and remand for further proceedings.

## B.

We turn next to Holloway's claim of retaliation. Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an

unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a); *see also Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). The district court held that Holloway failed to plead facts supporting a causal connection between his EEO complaints and his termination.

We conclude that Holloway's claim passes muster at the pleading stage. Holloway's complaint alleges that he submitted three EEO complaints, the last of which he filed almost three months before he was terminated. Temporal proximity between an employee's charge of discrimination and an adverse employment action can support an inference that the employer acted "because" of that charge. 42 U.S.C. § 2000e-3(a). As Defendants note, although there is no bright-line rule for temporal proximity, in previous cases we have held that "a three-month period between the protected activity and the adverse action," without more, "does not support a finding that there is a causal link." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021). But in some cases, intervening events can bridge what would otherwise be a prohibitively long temporal gap. *See*, *e.g.*, *Tutt v. Wormuth*, No. 19-2480, 2021 WL 4076729, at *2 (4th Cir. Sept. 8, 2021) (holding that allegations of "supervisors' repeated comments regarding [the] protected activity and events occurring prior to the adverse action" sufficiently bridged the 16-month gap between the protected activity and the adverse action). Here, Holloway has alleged that, during their early morning meeting in June, Teller "exclaimed" that he was aware of Holloway's EEO complaint against Pindale and that Teller "would be involved." J.A. 12. This intervening comment by Holloway's supervisor, taken as true, tempers the temporal

gap between Holloway's last EEO complaint and his termination. Considering the timing, Teller's intervening statement, and the previously identified allegations of pretext together, we conclude that Holloway has alleged facts supporting a plausible inference that he was terminated "because" of his protected activity. 42 U.S.C. § 2000e-3(a). We therefore vacate the dismissal of Holloway's retaliation claim and remand for further proceedings.

C.

We turn last to Holloway's claim that he was subjected to an abusive or hostile work environment based on his race or protected activity. On this point, we agree with the district court that Holloway's complaint fails to state a claim.

A hostile environment that violates Title VII "exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (internal quotation marks and brackets omitted). Thus, to state a hostile work environment claim, Holloway must allege that: (1) he "experienced unwelcome harassment"; (2) the harassment was based on his race or protected activity; (3) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) "there is some basis for imposing liability on the employer." *Bass*, 324 F.3d at 765. Regarding the third element, "[w]hether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position." *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks omitted). "That determination is made by looking at all the circumstances, which

may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). "[R]ude treatment," "callous behavior," or "routine difference of opinion and personality conflict," without more, will not suffice. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–316 (4th Cir. 2008) (internal quotation marks omitted).

Holloway's complaint falls considerably short of alleging an abusive working environment. He alleges that, over the course of several months, Pindale required him to communicate with Washington instead of Pindale directly; employees were surveyed about Holloway's leadership and his whereabouts during the workday; Teller criticized Holloway's leadership and budget management in meetings; Teller scheduled a meeting an hour and a half before Holloway's usual start time and, during the meeting, yelled at Holloway, slammed documents onto a table, and required Holloway to address him as "sir"; Teller required Holloway to sign a disciplinary evaluation or else be considered insubordinate; and Teller did not honor Holloway in an employee-recognition program. Evaluation and criticism of one's work performance, while perhaps unpleasant, is not abusive. Nor can failure to praise support a hostile work environment claim. And we reject Holloway's contention that one episode of yelling and pounding the table, even considered with his other allegations, is sufficiently severe or pervasive to establish an abusive environment. *See Buchhagen v. ICF Int'l, Inc.*, 545 Fed. App. 217, 219 (4th Cir. 2013) (holding that plaintiff failed to allege sufficiently severe and pervasive harassment based on supervisor yelling at plaintiff in one meeting, yelling and pounding the desk in another

meeting, harping on mistakes, unfairly criticizing plaintiff, making snide comments, and playing favorites). Accordingly, we affirm the district court's dismissal of Holloway's hostile work environment claim.

IV.

In sum, we vacate the district court's dismissal of Holloway's Title VII claims for unlawful termination and retaliation and remand those claims for further proceedings. We affirm the dismissal of Holloway's hostile work environment claim. We further conclude that Holloway did not assert a claim of pay discrimination, despite scattered references to pay disparities in his complaint. On remand, the district court can consider Holloway's request to amend his complaint.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*