**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 21-1617

_____

DIANA ROESINGER,

       Plaintiff – Appellant,

   v.

POHANKA OF SALISBURY, INC.,

       Defendant – Appellee.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge. (1:20-cv-02439-RDB)

_____

Argued: September 19, 2023                  Decided: February 21, 2024

_____

Before NIEMEYER, RICHARDSON, and RUSHING, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Richardson joined.

_____

**ARGUED:** Robin Ringgold Cockey, COCKEY, BRENNAN & MALONEY, PC, Salisbury, Maryland, for Appellant. Luke Americus Rommel, Salisbury, Maryland, for Appellee. **ON BRIEF:** Ashley A. Bosché, COCKEY, BRENNAN & MALONEY, P.C., Salisbury, Maryland, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Diana Roesinger was the sole female service technician employed at Pohanka of Salisbury's Toyota dealership.  Her tenure in the service department was rocky, and Roesinger voiced concerns to management about unfair treatment and harassment.  After she was fired for insubordination, Roesinger sued Pohanka, alleging retaliation and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*[*]  The district court granted summary judgment to Pohanka on all three claims: retaliation, wrongful termination, and hostile work environment.  Upon reviewing the district court's judgment de novo, we affirm.

I.

We apply the same legal standards as the district court.  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when, viewing all facts and reasonable inferences in the light most favorable to the non-moving party, a court finds that a reasonable jury could return a verdict in that party's favor.  *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).  We consider each of Roesinger's three claims in turn, beginning with retaliation.

---

[*] Roesinger brought the same claims under the Maryland Fair Employment Practices Act (MFEPA).  Md. Code Ann., State Gov't § 20-606.  On appeal, Roesinger has focused exclusively on Title VII, asserting that substantially similar standards apply to her MFEPA claims.  For that reason, we too address only Title VII.

A.

Title VII forbids an employer from retaliating against an employee because she has opposed an unlawful discriminatory employment practice. 42 U.S.C. § 2000e–3(a). Roesinger alleges that Pohanka fired her because she complained about her supervisor's discriminatory practice of refusing to assign her the more lucrative repair jobs based on her sex.

To prove this claim, Roesinger proceeds under the three-step *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). At the first step, Roesinger must establish a prima facie case of retaliation by showing that (i) she engaged in protected activity, (ii) Pohanka took adverse action against her, and (iii) a causal connection exists between the two. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The burden then shifts to Pohanka to articulate a legitimate nonretaliatory reason for the adverse action. *Id.* If it does so, then Roesinger must prove that the nonretaliatory reason articulated by Pohanka was not its true reason but rather a pretext for retaliation. *Id.*; *see also Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 176 (4th Cir. 2023).

Roesinger's proof fails at the third step of the burden-shifting framework. We assume Roesinger has made a prima facie case of retaliation. And Pohanka has articulated a legitimate reason for her termination: insubordination. Roesinger disobeyed a direct order from manager Wayne Bowen not to leave a meeting, despite his warning that she would be fired if she left. Because that reason is "not forbidden by law," it satisfies Pohanka's burden. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal

3

quotation marks omitted). Therefore, the only question is the ultimate one: whether Roesinger has shown a genuine dispute of material fact about whether Pohanka's reason was a pretext for retaliation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Roesinger advances three arguments on appeal. First, she highlights inconsistent statements from Pohanka about whether she quit or was fired, arguing that this inconsistency reveals Pohanka's explanation was pretextual. However, a "plaintiff cannot seek to expose [a] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006). Roesinger was fired for walking off the job in violation of a direct order. Pohanka has referred to that event as termination or quitting or both. The discrepancy, if any, among those descriptions in this circumstance does not cast doubt on Pohanka's legitimate explanation.

Roesinger next argues that Pohanka's explanation is pretextual because a Maryland unemployment benefits examiner reviewed the evidence and concluded Roesinger had not committed misconduct in that final meeting with Bowen. The benefits hearing posed a fundamentally different question than the one we face here. The question in that hearing was whether Pohanka could prove by a preponderance of the evidence that Roesinger had actually committed misconduct—that is, whether Pohanka was correct to fire Roesinger. By contrast, our inquiry is whether Roesinger can prove that she was fired for an unlawful retaliatory reason. "[I]t is not our province to decide whether the reason [Pohanka fired her] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [her]

4

termination." *DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted).   The examiner's report might allow a reasonable jury to infer that Pohanka was incorrect to find Roesinger insubordinate.  But the report does not create a genuine dispute about whether insubordination was the true reason Pohanka fired her.

Lastly, Roesinger notes that the parties dispute the tone of her termination meeting. The dispute is genuine: Roesinger avers that Bowen was yelling and cursing, whereas Pohanka witnesses insist he was measured.  But the dispute is not material.  The parties agree that, during the meeting, Bowen warned Roesinger that she would be fired if she left the office and that she then left the office.  Whether Bowen was yelling or not when he issued this ultimatum does not alter the critical fact that Roesinger left the office despite her manager's warning.  Roesinger responds that Bowen's tone goes to "entrapment"— that his aggressive tone when ordering her to stay at work would provoke any self-respecting person to disobey the order and leave.  Oral Arg. at 3:02–3:03.  Even if Roesinger's defiance of her manager's rudely uttered demand was justified, it does not show that Pohanka's real reason for terminating her was not insubordination but retaliation for her complaints about sex discrimination.

Because Roesinger has not shown a genuine dispute about whether Pohanka's stated reason for her termination was a pretext for retaliation, we affirm summary judgment for Pohanka on the retaliation claim.

## B.

Roesinger's wrongful termination claim fails for the same reasons.  Proceeding again under *McDonnell Douglas*, Roesinger alleges that Pohanka discharged her because

5

she is a woman. *See* 42 U.S.C. § 2000e–2(a)(1). As before, we assume that Roesinger has made a prima facie case of wrongful termination. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (elements of prima facie discriminatory termination). But for the reasons discussed above, Roesinger has failed to show that Pohanka's explanation for her termination was a pretext for sex discrimination. We therefore affirm summary judgment for Pohanka on the wrongful termination claim.

## C.

We lastly consider Roesinger's hostile work environment claim. Title VII forbids an employer from subjecting an employee to a hostile work environment because of his or her sex. *See* 42 U.S.C. § 2000e–2(a)(1); *EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 327 (4th Cir. 2010). To succeed on a hostile work environment claim, "a plaintiff must show that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Fairbrook Med. Clinic*, 609 F.3d at 327 (internal quotation marks omitted).

The conduct alleged here can be grouped into three categories. First, Roesinger asserts that her direct supervisor, Tyler Burrs, manipulated the assignment system to deny her complex and lucrative repair jobs, which were instead assigned to male technicians; that Burrs and her coworkers hyperscrutinized her work; that her coworkers ostracized her; and that she was denied training opportunities. Second, unidentified male coworkers defaced the women's restroom with feces and drug paraphernalia. Third, manager Thomas Chilcoate and the human resources director told her to act like a "big girl," and Burrs and

6

one or more unnamed coworkers called her a vulgar sex-based slur, either to her face or behind her back. All this conduct was unwelcome. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008).

The restroom incidents are not imputable to Pohanka. Harassment by coworkers is imputable to an employer only if the employer "knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it." *Bazemore v. Best Buy*, 957 F.3d 195, 201 (4th Cir. 2020). After Roesinger reported the restroom problems to Chilcoate, he locked the door so male employees could not use the women's room and kept the key in his office for Roesinger to access. This response was reasonably calculated to end the harassment, and it in fact did so. Roesinger says this solution made it less convenient for her to use the restroom and Chilcoate never directly addressed her coworkers about their behavior. "But Title VII requires only that the employer take steps reasonably likely to stop the harassment"; beyond that, "the exact disciplinary actions lie within [the employer's] discretion." *Id.* at 202 (internal quotation marks omitted).

Even assuming, without deciding, that the other mistreatment Roesinger faced was because of her sex, the evidence does not demonstrate that "'the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The objective component of this standard sets a "high bar." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). "Rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of

7

opinion and personality conflict with one's supervisor, are not actionable under Title VII." *Id.* (internal quotation marks and alterations omitted).

Roesinger's evidence cannot surmount this high bar. Undesirable work assignments, a boss who plays favorites and criticizes one's work, colleagues who give the cold shoulder, and "the sporadic use of abusive language" are "ordinary tribulations of the workplace" that, while unfair and hurtful, do not implicate Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted); *see also Holloway v. Maryland*, 32 F.4th 293, 301 (4th Cir. 2022) (explaining that a supervisor "yelling at plaintiff in one meeting, yelling and pounding the desk in another meeting, harping on mistakes, unfairly criticizing plaintiff, making snide comments, and playing favorites" was not severe or pervasive harassment). There is some evidence that Roesinger's coworkers and superiors also used demeaning sex-specific language: over an unspecified period of months or years, upper-level personnel twice told her to act like a "big girl," and Burrs and one or more unidentified coworkers called her a vulgar slur. However, "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal quotation marks and ellipsis omitted). "The same goes for 'simple teasing [and] offhand comments.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Faragher*, 524 U.S. at 788). These few incidents of belittling language and crude name-calling are not so severe or pervasive, even considered together with all the other circumstances, to "amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

8

Because the totality of the evidence fails to create a genuine question of material fact about whether Roesinger endured sex-based harassment so severe or pervasive that it constituted a hostile work environment, we affirm summary judgment for Pohanka on this claim as well.

## II.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.