**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1117**

———————

HAMILTON HALL SWART, III; RICHARD EARL DASILVA,

        Plaintiffs – Appellants,

v.

JASON S. MIYARES; HAROLD W. CLARKE,

        Defendants – Appellees.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. David J. Novak, District Judge. (3:23−cv−00753−DJN)

———————

Argued: September 9, 2025                    Decided: October 15, 2025

———————

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

———————

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge King joined.

———————

**ARGUED:** Jeffrey Edward Fogel, Charlottesville, Virginia, for Appellants. Kevin Michael Gallagher, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Jason S. Miyares, Attorney General, Margaret A. O'Shea, Senior Assistant Attorney General, Erika L. Maley, Solicitor General, Rick W. Eberstadt, Deputy Solicitor General, Michael Dingman, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

WILKINSON, Circuit Judge:

The Virginia Department of Corrections kept Hamilton Hall Swart, III and Richard Earl DaSilva incarcerated for a year after they were entitled to be released. Director Harold Clarke did not release them because, based on the legal advice of Attorney General Jason Miyares, he did not believe inmates convicted of attempted aggravated murder were eligible to receive enhanced sentence credits under a recently enacted state law.

After the Supreme Court of Virginia ruled otherwise, Swart and DaSilva brought this action under § 1983 to hold Miyares and Clarke personally liable for their mistake. The district court rejected that attempt and we now affirm. It would be inimical to the federal-state relationship to have a federal court hold state officials liable in damages for reaching the wrong conclusion on an unsettled question of state law.

I.

A.

Inmates in Virginia have long been allowed to earn sentence credits for good behavior. *See* Va. Code § 53.1-202.2(A). Each credit they receive reduces their term of incarceration by one day. *Id.* For decades, inmates could only earn 4.5 credits for every 30 days served. *Id.* § 53.1-202.3 (effective until July 1, 2022). Then, in 2020, the Virginia General Assembly enacted H.B. 5148, which expanded the availability of sentence credits to 15 for every 30 days served. Act of Nov. 9, 2020, ch. 50, 2020 Va. Acts Spec. Sess. 132. This change in the law applied retroactively, meaning some inmates would be due for immediate release when the law took effect on July 1, 2022. *Id.* at 133.

2

Not all inmates are eligible to receive these enhanced sentence credits, however. If an inmate is serving a sentence for an offense enumerated by H.B. 5148, then he remains limited to earning 4.5 credits for every 30 days served. *Id.* at 132. Enumerated offenses include Class 1 felonies, solicitation to commit murder, and "any violation of" the statute punishing first- and second-degree murder. *Id.*; Va. Code § 18.2-32.

To aid the Department of Corrections in determining which inmates would be eligible to receive enhanced sentence credits, Director Harold Clarke requested an advisory opinion from then-Attorney General Mark Herring. J.A. 5, 18. Among other questions, Clarke asked Herring whether inmates convicted of inchoate offenses related to aggravated murder would be eligible to receive enhanced sentence credits. J.A. 18. While the completed act of aggravated murder is a Class 1 felony, inchoate acts related to the offense are not. *Compare* Va. Code § 18.2-31, *with id.* §§ 18.2-22(a)(1), -25, -29.

Herring advised Clarke that inmates convicted of solicitation to commit aggravated murder would not be eligible for enhanced sentence credits because solicitation to commit murder is an enumerated offense. J.A. 20. Conspiracies and attempts to commit aggravated murder are not enumerated offenses, however, so Herring concluded that inmates convicted of those offenses would be eligible for enhanced sentence credits. J.A. 21.

In early 2022, Jason Miyares succeeded Herring as the Attorney General of Virginia. J.A. 6. Miyares was a strong opponent of H.B. 5148 and voted against the bill while he was serving in the General Assembly. J.A. 6. Even though Clarke had already received an advisory opinion from Herring, he decided to request one from Miyares too.

3

J.A. 13. Miyares sent Clarke his advisory opinion in April 2022, less than two months before H.B. 5148 was set to take effect. J.A. 13.

Contrary to Herring's advice, Miyares told Clarke that inmates convicted of any inchoate act related to aggravated murder would not be eligible to receive enhanced sentence credits. J.A. 16. Miyares observed that solicitation to commit murder is included as an enumerated offense and reasoned that it would be irrational to conclude the General Assembly intended to treat inmates convicted of that offense more harshly than inmates convicted of conspiracies or actual attempts to commit aggravated murder. J.A. 15–16.

One year later, the Supreme Court of Virginia resolved the interpretive dispute in *Prease v. Clarke*, 302 Va. 376 (2023), where it unanimously held that inmates convicted of attempted aggravated murder *were* eligible for enhanced sentence credits. *Id.* at 378, 386. Although H.B. 5148 mentions "any violation of" other criminal statutes, including the statute punishing first- and second-degree murder, the Court observed that the statute punishing aggravated murder was "conspicuously absent from the list of enumerated offenses." *Id.* at 384–85. And in response to an argument that its interpretation would lead to the absurd result of treating a more serious crime less harshly, the Court stated that it has "repeatedly explained that '[a]n absurd result describes an interpretation that results in the statute being internally inconsistent or otherwise incapable of operation.' Neither of those situations applies here." *Id.* at 385 (citation omitted) (quoting *City of Charlottesville v. Payne*, 299 Va. 515, 532 (2021)).

4

B.

Swart and DaSilva were both serving a term of incarceration for attempted aggravated murder when H.B. 5148 was passed. J.A. 5. Pursuant to Herring's advice, the Department of Corrections initially notified them that they would be released in July 2022, around the time the new law would go into effect. J.A. 5. But after Miyares issued his advisory opinion, Clarke reversed course and kept them incarcerated. J.A. 6. They did not get released until July 2023, when the Supreme Court of Virginia rendered its decision in *Prease*. J.A. 6.

Swart and DaSilva brought this action for damages under 42 U.S.C. § 1983, claiming Miyares and Clarke violated the Eighth and Fourteenth Amendments by acting with deliberate indifference to their over-incarceration. J.A. 8–10. They alleged that Miyares' advisory opinion lacked any basis in law and was motivated instead by his political opposition to H.B. 5148. J.A. 6–8.

The district court dismissed the complaint for failing to state a claim. J.A. 2–3, 58–59. The court found that Miyares had carefully considered the text of the statute, applied familiar canons of construction, and appropriately weighed legislative intent. J.A. 52. It concluded that Miyares acted reasonably in the face of a statute that was subject to varying interpretations, as did Clarke in choosing to follow Miyares' advice. J.A. 53, 56–57. Swart and DaSilva timely appealed the court's decision, which we review *de novo*. *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022).

5

II.

A.

Swart and DaSilva first argue their over-incarceration violated the Eighth Amendment's prohibition on "cruel and unusual punishments." U.S. Const. amend. VIII. They claim there was no penological justification for keeping them in prison for a year after they were entitled to be released. *See Gregg v. Georgia*, 428 U.S. 153, 183 (1976) ("[T]he sanction imposed cannot be so totally without penological justification that it results in the gratuitous infliction of suffering.").

This court has never squarely addressed whether continued incarceration after an inmate's sentence has expired violates the Eighth Amendment. *See Campbell v. Florian*, 972 F.3d 385, 394 (4th Cir. 2020). Other circuits have taken varied approaches. *See Werner v. Wall*, 836 F.3d 751, 760–61 & n.25 (7th Cir. 2016) (collecting cases). Some have considered claims of over-incarceration under the Eighth Amendment. *E.g.*, *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006). Others, under the Fourteenth Amendment. *E.g.*, *Parker v. LeBlanc*, 73 F.4th 400, 407 (5th Cir. 2023). And still more, under both. *E.g.*, *Hurd v. Fredenburgh*, 984 F.3d 1075, 1084–89 (2d Cir. 2021). For its part, the Supreme Court has held that continuing to detain a person beyond the length of his sentence violates the Fourteenth Amendment. *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972).

In our view, the Fourteenth Amendment is the better vehicle to bring such claims. The Cruel and Unusual Punishments Clause primarily concerns "the method or kind of punishment imposed" on those convicted of crimes. *Ingraham v. Wright*, 430 U.S. 651, 667 (1977) (quoting *Powell v. Texas*, 392 U.S. 514, 531–32 (1968) (plurality opinion)).

6

Incarceration is neither a cruel nor unusual form of punishment. Certainly, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). But Swart and DaSilva are challenging the fact of their incarceration, not the conditions of their confinement. That sort of claim "does not fit neatly within the ambit of the Eighth Amendment." *Campbell*, 972 F.3d at 394; *accord Jones v. City of Jackson*, 203 F.3d 875, 880–81 (5th Cir. 2000).

Even if Swart and DaSilva could bring their claims under the Eighth Amendment, they must plausibly allege that Miyares and Clarke acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). That is no easy task. The deliberate indifference standard requires a state of mind equivalent to criminal-law recklessness. *Id.* at 835–38. Mere negligence, or even civil-law recklessness, will not do. *Id.* Miyares and Clarke "must have both subjectively recognized a risk of substantial harm and subjectively recognized [their] actions were inappropriate in light of the risk." *Campbell*, 972 F.3d at 395 (internal quotation marks omitted) (quoting *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017)).

Swart and DaSilva say they have met this standard. They argue that Miyares relied on inapplicable and irrelevant concepts to justify a politically motivated interpretation that had no basis in the text of H.B. 5148. In their view, the Supreme Court of Virginia's opinion in *Prease* demonstrates how flawed Miyares' position was in its reasoning and conclusions. Given Miyares' opposition to H.B. 5148 and his failure to utilize proper legal analysis, Swart and DaSilva say it is reasonable to infer that he acted with deliberate

7

indifference. *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("[A] factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference [of deliberate indifference]."). So too with Clarke, who chose to disregard Herring's reasoned opinion in favor of one that had no basis in law.

The deliberate indifference standard is not close to being met in this case. Far from a "patently inadequate" response, *id.*, Miyares approached the interpretive task before him "as a careful attorney would," *Campbell*, 972 F.3d at 395. He started with the text of H.B. 5148. Where the text was subject to varying interpretations, he considered legislative intent and other tools of statutory interpretation. J.A. 14–17, 52. Miyares reached many of the same legal conclusions that Herring did, *compare* J.A. 13–17, *with* J.A. 18–22, even when he did not agree with the result as a matter of policy, *see* J.A. 17 n.9.

To be sure, Herring and Miyares did not agree on how to treat inchoate acts. But disagreement simply indicates the existence of a legal dispute. That is standard fare in our profession. Indeed, the treatment of inchoate offenses is a frequent bone of contention in the criminal law. Herring reached one conclusion after applying certain canons of construction, J.A. 20, Miyares reached a different conclusion after placing greater weight on apparent legislative intent and an irrationality analysis, *see* J.A. 15. Whatever one's views are on the merits of their dispute, Miyares' position had a basis in law and was supported by conventional methods of legal reasoning. Nothing more is required to dispel an allegation of deliberate indifference. *See Campbell*, 972 F.3d at 395–96.

That Miyares once opposed H.B. 5148 as a delegate in the General Assembly does not support an inference of deliberate indifference either. That proposition is too broad. We

8

will not presume bad faith when former legislators interpret a law as judges or, as here, officials within the executive branch. To hold that earlier legislative service opens wide the door to federal damages suits would force an endless spate of recusals given the multitude of matters that come before a legislative body. It also ignores how a different branch of government brings with it a distinctive set of obligations, values, and perspectives that shape how an official approaches the issues that come before him. Those in public life are not imprisoned by prior positions to the point that they cannot perform their new duties conscientiously. Everyone carries past experience in their present work, and we cannot hold that former legislators should be uniquely disadvantaged for doing so.

The fact that the Supreme Court of Virginia ultimately disagreed with Miyares' interpretation is also not dispositive. As we explained in *Campbell*:

> An incorrect legal opinion often occurs without some negligent (much less reckless) act or omission. In our adversarial legal system, roughly 50% of litigants lose—and thus have pressed an incorrect legal opinion. Competent administrative agencies and lower courts are often overturned despite careful and thoughtful legal interpretations. . . . And even at the highest levels of the law, four colleagues at times share an "incorrect" or "unreasonable" opinion. An unreasonable outcome in that context cannot support an inference that the dissenters were negligent or criminally reckless in their analysis.

*Id.* at 396–97 (citation omitted).

The Attorney General of Virginia has a duty to share his views on unsettled questions of state law when other state officials request his counsel. *See* Va. Code § 2.2-505(A). In the absence of judicial precedent to guide his analysis, it is unsurprising that his views will not always prevail. That is no concern of the federal Constitution or the federal judiciary. Nor should it be. To hold a state attorney general liable in damages for advising

9

other state officials on routine matters of state law is to strike at the heart of our system of dual sovereignty. "If state law is transgressed, state courts are open to redress that violation." *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 441 (4th Cir. 2002). Indeed, state courts "exist, in part, to protect citizens from abuses of state law." *Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 288 (4th Cir. 1998).

For similar reasons, Swart and DaSilva also fail to state a claim against Clarke. While Clarke could have continued to rely on Herring's advisory opinion, it was not unreasonable for him to seek out and follow the advice of the current attorney general on a contested issue of state law.

## B.

Swart and DaSilva's arguments under the Fourteenth Amendment fare no better. Substantive due process claims in this context are disfavored and rare. To state a claim, a plaintiff must allege conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). "[C]onduct intended to injure in some [unjustifiable] way" is "most likely to rise to the conscience-shocking level," while "negligently inflicted harm is categorically beneath the threshold." *Id.* at 849.

Miyares did nothing to "shock the conscience" here. He discharged the duties of his office in a manner that might elicit disagreement but not disrespect. And following Miyares' reasonably solicited advice, Clarke acted within his lawful role as well. What indeed would shock the conscience is an award of damages in federal court against a state

10

attorney general for a routine resolution of an issue of state law. That truly would turn federal-state relations inside out and upside down.

Our Constitution is a constitution, after all, not "a body of general federal tort law." *Paul v. Davis*, 424 U.S. 693, 701 (1976). Swart and DaSilva may or may not have better luck seeking their desired relief under Virginia law, but that is a question for Virginia courts to answer, not us.

The judgment is in all respects affirmed.

*AFFIRMED*